PATRICK J. SCANLON vs. BOSTON AND ALBANY RAILROAD
COMPANY.

Worcester.    October 2, 1888. — October 19, 1888.

Present : MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Personal Injuries — Master and Servant — Risk incident to Employment of
Railroad Brakeman.*

A brakeman on a railroad, while climbing up a ladder on the side of a freight car, was injured by colliding with a signal post outside of the track and three feet and a half from it, and but one foot from the ladder, there being but few such structures on the line of the road so near the track. It was his first trip as a brakeman, and he was unfamiliar with the road and with the running of trains, and he was not cautioned or informed of such a danger, and he had no reason to know that there were permanent structures so near the tracks as to make it dangerous for him to be in such a place. *Held*, in an action to recover for such injuries, that the risk was not so obviously incident to the employment that he could be said to have assumed the risk thereof, and that the action could be maintained.

TORT for personal injuries received by the plaintiff while in the defendant's employment as a brakeman.  Trial in the Superior Court, before *Dewey*, J., who ordered a verdict for the defendant, and reported the case for the determination of this court, as follows.

The plaintiff, after having been sent to Boston the previous Saturday for an examination as to color blindness, entered into the employment of the defendant on the day of the accident, which took place on Monday, February 7, 1887.  He was on that day put as a brakeman upon a local freight train, which ran from Worcester to Boston.  He testified that he might have been over the road before six times in all, during several years, as a passenger; that he had previously been in the employment of the city of Worcester, in the sewer department, for several years; and that he had, at an earlier period, when he first came to this country, been in a freight depot in Boston, on the Boston and Maine Railroad, as a freight handler.

The evidence introduced tended to show, that, when the train reached Cottage Farm Station, it was running at the rate of about fifteen miles an hour; that the plaintiff, with the brakeman of the head car, was on the tender of the engine, the

plaintiff having gone there to learn from that brakeman what might be wanted of him; that the brakeman of the head car had just got down on to the moulding on the after end of the tender to draw the coupling-pin to disconnect the engine from the train; that the plaintiff got down upon the moulding of the tender, apparently to help, whereupon the brakeman of the head car told him to get up again, because he was going to let off the train; that the plaintiff, in order that he might mount the head car, swung himself on to the ladder, which was on the outside of the car, instead of being upon the end of the car next to the tender, so that in climbing the ladder the plaintiff was upon the south side of the head car; that he was struck by a signal post and knocked from the car, receiving the injuries; that the signal post was about ten inches square, and had on its top a round signal box, intended to display signals to engineers of any obstruction upon the track; that at the point where the signal post stood, there were four tracks running into Boston; that the train on which the plaintiff was a brakeman was upon the second track from the north, being the main east-bound track; that the signal post was placed between the south rail and north rail respectively of the second and third tracks from the north, as near as could be half-way between them; that the distance from the south rail of the track on which the train was moving to the signal post was three feet and a half; that the height of the post and shoulder on which the signal box rested was nearly fifteen feet; and that the car, including the ladder, projected two feet and a half beyond the south rail, and that the height of the car from the rail was twelve to thirteen feet.

The plaintiff testified, that he had no knowledge whatever of the height of this post; that he had no knowledge of the proximity of this, or other objects, to the track; that he had no directions given him at all, by any person, in regard to the car, or obstructions on the road, or in regard to his duties on the train, other than as it was a local freight train he found that he was wanted anywhere it might be convenient upon the train in the switching, and that when he had once been on the tender before, on returning to the train, he was told to keep near the brakeman of the head car and he would find what to do; and that when he mounted the ladder he looked forward to see if

there was anything in his way, but that the smoke from the engine prevented his seeing.

The electrical engineer of the defendant testified that the road at this point was on a curve, and that the curve was such that, as the train moved in an easterly direction, its south side would be on the outside of the curve, and this signal post could be seen but a short distance.   There was no evidence, on the part of the defendant, contradicting the testimony of the plaintiff, that he was given no directions other than those stated above.

The defendant called witnesses to show that an examination had been made on its railroad for fifteen miles west of Boston, including the neighborhood of the Cottage Farm Station, which is some three or four miles from Boston ; that an examination of the permanent structures and buildings on the tracks of the road disclosed that seven structures in that fifteen miles were as near the track as this post, two of them being signal posts, next to this one in succession, and between the tracks, where the road was a four-track road ; that the other objects were bridges, abutments, and a telegraph pole ; that these signal posts were, in most cases, placed at a greater distance from the track, but the electrical engineer of the company testified that at this place there was no easily practicable position in which this signal could have been placed for the purpose for which it was intended, other than the position in which it was placed, which was to warn the engineer, coming from Boston on the third track from the north, of any train standing at Cottage Farm Station, and was therefore placed upon the right of this track.

The defendant asked the judge to rule that the plaintiff could not recover, as the danger to which he had been exposed and which had caused him his injuries was incident to the employment he had taken upon himself ; that there were no facts, special to the case, to take it out of the rule ; and that the dangers incident to the employment defeated the recovery by an employee; and the judge, against the plaintiff's objection, so ruled, and directed a verdict for the defendant.   If the ruling was right, judgment was to be entered on the verdict; otherwise, a new trial was to be granted.

*F. P. Goulding*, for the defendant.
*W. S. B. Hopkins*, for the plaintiff.

W. ALLEN, J.  The danger, the risk of injury, which it is claimed that the plaintiff assumed, was not the particular danger from the post which caused the injury, but the general danger from the structures and erections near the track.  The plaintiff had no actual knowledge of the danger, and he cannot be held to have assumed the risk of it unless the character of the danger and the circumstances are such as to show that he ought to have known and appreciated it.  The fact that it was incident to the employment is not sufficient; peril from dangerous machinery or appliances or structures is incident to employment upon them, but the risk is not assumed by the employee unless he knows the danger, or unless it is so obviously incident that he will be presumed to know it.  The danger in this case was not from objects casually or accidentally near the side of the car, but from permanent erections maintained near the track by the defendant.  The circumstances are not such that the plaintiff will be presumed to, or ought to, have known of the danger.  He did not know that there were erections so near the track as to endanger him.  Such erections were, in fact, few and exceptional.  Within fifteen miles of Boston there were but seven, three signal posts, one telegraph pole, and three bridges and abutments; it does not appear whether there were any others upon the road.  It was the plaintiff's first trip as brakeman; he was unfamiliar with the road and with the running of trains, and was not informed that there was any such danger, or in any way cautioned in regard to it; and he had no reason to know that there were permanent erections so near the tracks as to make it dangerous for him to be upon the place on the car which was provided by the defendant.

The case of *Lovejoy* v. *Boston & Lowell Railroad*, 125 Mass. 79, was in some respects very similar to this.  An engineer, leaning out from the cab of his engine, was struck by a signal post.  The post was one of a series equally distant from the track; the abutments of forty-six bridges, and numerous buildings, station entrances, and other structures on the line of the railroad, were as near to the track, and these facts were known to the plaintiff.  The court say: " If there was any danger to the plaintiff, while in the performance of his duty, from the structures thus placed, it was a risk he had assumed.  He knew the manner in which the road was constructed, the proximity

to the track of these structures, and the methods employed in the management of the trains. The defendant had the right to construct its road and conduct its business in this manner, and, as was said in *Ladd* v. *New Bedford Railroad*, 119 Mass. 412, is not liable to one of its servants, who is capable of contracting for himself, and knows the danger attending the business in the manner in which it is conducted, for an injury resulting therefrom."

In *Yeaton* v. *Boston & Lowell Railroad*, 135 Mass. 418, the plaintiff was employed upon a switching engine, which was used to move cars about the defendant's yard, and part of the plaintiff's business was to move damaged cars, and he knew the danger that attended handling them, and sometimes examined cars to see if they were damaged. The court held, that the defendant was not bound to give notice to the plaintiff that a particular car which was in the yard to be moved was defective, but that the plaintiff took the risk of ascertaining that fact.

In the case at bar, it was the general danger from permanent structures of which the defendant failed to give notice.

*Leary* v. *Boston & Albany Railroad*, 139 Mass. 580, was the case of a fireman upon a switching engine, who was standing upon the footboard of the engine, and was thrown off by the jolting of the engine in crossing frogs and switches. It was held, that the plaintiff had full knowledge of the danger, and assumed the risk, and that the defendant was not in fault. In *Ferren* v. *Old Colony Railroad*, 143 Mass. 197, the plaintiff was injured by being pressed between a car, which he was pushing, and a building. He knew the position of the building and of the car, but did not appreciate the peril. The court say: " The material point of distinction between this case and many others is, that here it is open to the jury to find that the plaintiff did not know or appreciate the risk of the work upon which he was engaged, and that in the exercise of due care he was not, as matter of law, bound to know or appreciate the same."

In the case at bar, we think that the danger was not so obviously incident to the employment that the plaintiff can be held to have assumed the risk of injury from it, and that it cannot be said, as matter of law, that he was bound to know and appreciate the danger.        *New trial granted.*