ELLEN O'DONNELL, ADMINISTRATRIX OF THE ESTATE OF
JAMES O'DONNELL, DECEASED, V. THE DULUTH,
SOUTH SHORE & ATLANTIC RAILWAY
COMPANY.

*Negligence—Master and servant—Trespasser.*

A verdict is held to have been properly directed in favor of the
defendant, there being no evidence in the case showing that
any officer of the defendant ever saw the decedent walking
between its tracks to and from his home, or had actual notice
of such fact, or that there was any beaten track or traveled
way along the side of or between said tracks, or that any
other of defendant's employés used this route as a way to
reach their homes, and it appearing that there were three
other ways by which decedent could have reached his home,
which ways he had often used; this case being distinguishable
in this respect from *Bouwmeester v. Railroad Co.*, 63 Mich. 557.

Error to Marquette. (Grant, J.) Argued November
18, 1891. Decided December 21, 1891.

Negligence case. Plaintiff brings error. Affirmed.
The facts are stated in the opinion.

*F. O. Clark,* for appellant.

*W. P. Healy,* for defendant.

LONG, J. The plaintiff brings this suit as adminis-
tratrix of the estate of James O'Donnell, deceased.

Deceased was the husband of the plaintiff, and was
employed by the defendant as an engine inspector. He
had been in defendant's employ for several months, and
for several years had been engaged in that kind of work
for the defendant and other railroad corporations. His
work was at the round-house of the defendant company,
situated near the east end of the company's yards. On

the east end of the yard is Fifth street, in the city of Marquette, and extending along the north side of the yard, running east and west, is Washington street. The yard is several hundred feet in extent east and west, and is occupied by some 12 or 15 tracks. The deceased resided at the west end of Washington street, north and west of the railroad. In going to and returning from his house he sometimes passed through the yard, along the line of these various tracks, to the scales in the company's yard at the west end, and from there passed northward to his home. There was a traveled way for pedestrians passing from the round-house a little eastwardly, and then north across these tracks to Washington street. There was also a way passing from the round-house, directly southward of the tracks, east to Fifth street. There was also a door leading from the round-house south to a wagon road extending eastward to Fifth street.

On the night of November 22, 1888, between 6 and 7 o'clock, the deceased was on his way home from work. He started from the round-house, and walked along between the tracks in the yard westward, and had reached a point about 800 feet from the round-house, and opposite a coal trestle of defendant, when the last car of a train which was running onto the trestle left the track, and struck him, injuring him so that he died about an hour afterwards. The train consisted of seven cars, going about six or seven miles an hour up grade onto the coal trestle; and in passing over the switch the hind trucks for some cause jumped the track, the other cars passing over the switch in safety. At the point in the yard where the deceased was struck were 11 tracks, lying close together. The deceased walked between two tracks which were only seven feet apart; and on the north track, at the place where he was struck, was a lot of

cars together, standing still, which barred his escape. These cars were struck and damaged by the car which jumped the track, killing deceased.

The allegation of negligence in the declaration is that—

"It was the duty of the said defendant to keep and maintain its said railroad track and its switches and its right of way between the said round-house and the said weigh-house in good repair, and in a reasonably safe condition, so that the said James O'Donnell, while passing rightfully over its said right of way between its main track and the next adjoining side track, carefully, and without negligence on his part, in going to and from his work as aforesaid, might do so without injury to his person; and that it was likewise the duty of the said defendant to keep the passage-way between the said main track and its said side track unobstructed and free from dangerous and sudden obstructions. And the plaintiff avers that the said defendant, neglecting its said duty, did not keep and maintain its said railroad track and its said switches and its said right of way and its said passage-way between its said two tracks in good repair and in a reasonably safe condition, and its said passage-way between its said tracks unobstructed and free from dangerous and sudden obstructions, but that, on the contrary, the said described switches, on the said 22d day of November, 1888, and for a long time prior thereto, was in a worn-out and shaky condition, and that the switch-bolts were loose, and the eye-holes in the connecting-rod and switch-rod were by long use so worn as to allow great play, and so worn as not to be in a reasonably safe condition, and the switch in its several parts so worn as not to be in reasonably good repair and condition; that, by reason of the worn-out condition of said switch and of the said eye-holes in the connecting-rod and in the switch-rod thereof, the north rails of the said track and switch would not meet and be directly opposite each other, but that, on the contrary, said defective switch caused a portion of the east rail to project towards the south for a distance of about three-quarters of an inch, and that the said switch and track, when in that condition, were not in a reasonably safe repair; and that the worn-out, defective, and unsafe condition of said switch and of its several parts should have been known and was known to said defendant for a long time previous

to said injury to said O'Donnell; and that, after said defendant ought to have had knowledge, and, in contemplation of law and in fact had knowledge, of said defective condition of said switch, said defendant waited an unreasonable time before repairing the same, and did not repair the said defective switch until the morning after the injury to said James O'Donnell, at which time said defendant did repair said defective switch."

On the trial in the court below the circuit judge very properly directed the jury to return a verdict in favor of defendant. There was no evidence in the case showing that any officer of the defendant ever saw the deceased walking between these tracks to and from his home, or had actual notice of his doing so. There is no evidence of any beaten path or traveled way along the side of or between these tracks, and there is no evidence that any of the other employés or other persons used this route as a way to reach their homes or to get to Washington street. There were three other ways by which deceased could have gone to his home, and ways which he often used. The diagram which is presented shows that had the deceased, in using the yard as a way of reaching his home, kept south of the tracks, he would have been out of the way of the cars, which, in the ordinary way of doing the work of the defendant company, were frequently run over these tracks and upon the side tracks and coal trestle.

The record does not present a case showing any duty upon the part of the defendant towards the deceased to keep its tracks and switches in the yard in good condition or repair, so that its trains and cars would safely pass the switches and side tracks upon which it was intended to run or shunt such cars; and the defendant company could not be held liable if, in the ordinary mode of doing its work, by some accident, either by the

switches or track being out of repair, the deceased was injured, unless it should be made to appear that the company was guilty of gross carelessness or recklessness in handling and running its cars, thereby inflicting the injury. It has been several times held by this Court that railroad companies are not held to the same degree of care in maintaining their side tracks as in the care of their main tracks. *Mich. Central R. R. Co. v. Austin,* 40 Mich. 250; *Batterson v. Railway Co.,* 53 Id. 125; *Hewitt v. Railroad Co.,* 67 Id. 71.

It is undoubtedly true that the owner or occupier of ʃands or premises is liable in damages to. those, using due care, going thereon at his invitation or enticement, express or implied, on any business to be transacted with or permitted by him, for the injury occasioned by the unsafe condition of such lands or premises, or of the access thereto, which is known to him and not to them, and which his negligence suffered to exist, and given them no notice of; but in the present case it appears that the deceased was using this way for his own convenience, when there were other ways open to him which were safe, and which he had frequently used; and the use which he attempted to make of this way through the company's grounds does not, by this record, appear to have been known by the company or any of its officers, or sanctioned by it.

There is no claim in the declaration, or any proofs showing or tending to show, that the company, its agents or servants, in operating the train or cars by which the deceased was struck and killed, did so in a reckless or wanton manner. The cars were being pushed upon this trestle in the ordinary way and at the ordinary speed.

Though the company or its officers may have known

that the tracks at this switch, and the switch itself, were not in such condition that they could be operated so that the cars at all times would pass safely from the main track upon the side track and thus to the coal trestle, yet, so far as the deceased was concerned, under the circumstances here stated, the company owed him no duty to repair the switch or tracks for the purpose of protecting him from injury, should he happen to be passing through the yard and along-side this track.

Counsel for plaintiff contends that this case falls within the ruling of this Court in *Bouwmeester v. Railroad Co.*, 63 Mich. 557. In that case, however, it appeared that the deceased had for months previous to his death been in the habit of going upon the railroad track in returning to his home after his work was done; that it was inconvenient and difficult to go by the ordinary route of travel; that it was almost a necessity for men living where he did to walk upon the track; that these facts were well known to the defendant company, and the use of the track thus made by the men was permitted. It also appeared in that case that, while the deceased was upon the track, and unaware of the train's approach, the engineer, who saw him there, and knew that he was unconscious of the train's approach, failed to check his engine, though he had time so to do; thus showing in that case that the claim was made that the deceased came to his death by the willful and wanton negligence of the engineer of the train. No such thing is averred in the present case, and no such principle is here involved.

The question of the deceased's contributory negligence is presented in the case, and it is insisted by the counsel for the defendant company that the record shows such contributory negligence, in the deceased placing himself in so dangerous a proximity to moving cars while those cars were standing upon another track only seven

feet distant. We need not discuss or determine the question of the contributory negligence of the deceased, as we are satisfied that the record does not disclose any negligence upon the part of the defendant company which would warrant a recovery.

The court below was not in error in directing a verdict in favor of defendant.

The judgment must be affirmed, with costs. ·

CHAMPLIN, C. J., MORSE and McGRATH, JJ., concurred. GRANT, J., did not sit.