POTTER v. DETROIT, GRAND HAVEN & MILWAUKEE RAIL-
WAY CO.

1. RAILROADS — INJURY TO EMPLOYÉ — PLEADINGS AND PROOFS —
VARIANCE.
    Where, in an action against a railroad company for personal
    injuries, brought by a brakeman who was struck, while
    climbing the side ladder of a car, by a telegraph pole alleged
    to have been placed too near the track, the declaration averred
    that it was necessary for him to ride on the ladder, and the
    proofs showed only that he was expected so to ride when
    climbing to the top of a car, there was no such variance as
    would work a surprise to defendant.

2. SAME—POST NEAR TRACK—ASSUMED RISK.
    It cannot be said, as a matter of law, that a railroad brakeman
    assumed the risk of injury from coming in contact with a tele-
    graph pole negligently placed so near to a side track as to
    prevent him, when riding on the side ladder of a car, from
    passing it in safety, where, though it appears that he had
    walked by the pole and had ridden by it on the tops of cars
    several times previous to the accident, it further appears that
    the other poles along the line were not so placed, and it is not
    shown that he had actual knowledge of the dangerous prox-
    imity of the pole in question. LONG, J., and GRANT, C. J.,
    dissenting.

3. SAME—RIGHT OF ACTION—RELEASE—CONSIDERATION.
    A release given by a brakeman to a railroad company, reciting
    that he had received certain injuries, and that, to avoid liti-
    gation, he, in consideration of re-employment by the company
    for such time as might be satisfactory to it, released such
    company from all claims for damages for such injuries, is
    without consideration, where he was, at the time it was given,
    in the employ of the company.

ON REHEARING.

TRIAL—MISCONDUCT OF COUNSEL—ARGUMENT TO JURY.
    Where the trial judge does nothing to check plaintiff's counsel
    in the use in his argument of language so intemperate and
    ·improper as to be prejudicial to defendant, it is reversible
    error.

Error to Shiawassee; Smith, J.    Submitted January 3, 1899; opinions filed December 12, 1899.    Rehearing granted January 23, 1900; former order vacated April 3, 1900.

Case by Frank A. Potter against the Detroit, Grand Haven & Milwaukee Railway Company for personal injuries.    From a judgment for plaintiff, defendant brings error.    Reversed.

*E. W. Meddaugh* ( *Geer & Williams*, of counsel), for appellant.

*Watson & Chapman,* for appellee.

MONTGOMERY, J.    The plaintiff was an employé of the defendant as a freight brakeman.    On the 17th of September, 1892, in the evening, at about 8:30, the train arrived at Milwaukee Junction, where two cars, standing on the " East Y," so called, were to be attached to the train, and pulled over a switch that led off the main track to the east Y.    Plaintiff turned the switch, gave the signal for the train to back down on the east Y, where the cars to be taken on were, preceded the train down the Y, and made the coupling.    The conductor gave the signal to go ahead.    Plaintiff testified that he started to climb up the side ladder of the car, and had gotten part way up, when he was struck by a telegraph pole, and injured somewhat seriously.    The testimony shows that plaintiff had been in the employ of defendant as a spare brakeman for 9 days during March and 19 days during April of the same year, and again from May 3d to some time in June, when he went to Pontiac; that he returned to work for the company in August, and worked on a passenger train during that month, and until September 14th; that on the 15th of September he left Detroit for Holly on a freight train, returned to Detroit on the morning of the 16th, and was at Milwaukee Junction at about 4:50 a. m.    While doing work as a freight brakeman, the plaintiff passed Milwau-

kee Junction frequently, and took on cars there.    He tes-
tified that he did not do any coupling at the east Y, but
the testimony is quite convincing that he did.    He testi-
fied that he had no knowledge that this pole was near
enough to the track to be dangerous.    From a judgment
for plaintiff, defendant appealed.

It is contended that there was a fatal variance between
the proof and the declaration.    The declaration was as
follows:

"And for that whereas, on, towit, the 17th day of Sep-
tember, 1892, said plaintiff was, and for a long time pre-
vious thereto had been, employed by said defendant as
brakeman on its cars in the yard at Milwaukee Junction,
a station along the line of said railroad; and, in the per-
formance of the duties imposed on said plaintiff by said
defendant in the employment aforesaid, it became and was
necessary for said plaintiff to ride back and forth in said
employment on the side of the railway cars, clinging to
the steps or ladders placed on the side of said cars by said
company for that purpose, and which is the usual manner
of performing and going to and from the work in and
about which plaintiff was employed.    *    *    *    But, not-
withstanding the duty aforesaid of the said defendant, it
wholly neglected and refused to perform such duty to-
wards said plaintiff, in that it placed and permitted to
remain a post or telegraph pole so near one of the tracks
of said railway in said yard that, while said plaintiff was
in the performance of his duty, and while riding along on
the side of one of the defendant's cars, as aforesaid, he
would be struck by said post or pole, and there was not
sufficient room between said car and said post or pole to
allow the body of said plaintiff, while engaged in his
duties as aforesaid, to pass without injuring him.    *    *    *
And while in the performance of his duty, as aforesaid,
and while riding on the side of a moving car, as aforesaid,
in the performance of such duty, he was struck by said
post or telegraph pole, negligently left standing by said
defendant so near its track in said yard, and was knocked
from the side of said car," etc.

There was testimony that it was necessary to climb up
the ladders of the cars while in motion, but the evidence
did not show that the brakemen were expected to ride on

the sides of the cars except in·this way. The testimony was not objected to, but at the close of the case the defendant's counsel asked an instruction that there was a fatal variance. We think the proofs· tended to support the averments. It is true that the evidence failed to show that the plaintiff could have properly ridden continuously on the side of the car, but the proof indicated that he might lawfully ride there while ascending to the top of the car. We do not think there was such a variance as to work a surprise to defendant.

It is next contended that the plaintiff assumed the risk of contact with the telegraph pole, and that a verdict should have been directed on that ground. In this connection it is insisted that the evidence shows conclusively that the plaintiff either knew, or should have known, of the proximity of this· pole to the track, and testimony which is very convincing, if not conclusive, is cited to show that plaintiff had on previous occasions assisted in taking cars off the east Y; and if this fact were enough to establish that plaintiff either knew, or from the nature of his employment ought to have known, that this pole was located so near the track as to be dangerous, we should be inclined to assent to the contention of counsel. But we are not prepared to say that if the plaintiff had the opportunity which would be afforded by walking past this pole, or riding back and forth on the tops of cars, he was bound to make so close an inspection as would enable him to discover that the pole in question, instead of being in a safe location, was a few inches too near the track.

It is, however, contended that, as matter of law, the plaintiff must be held to have assumed the risk of such structures near the track as the pole in question. It is said that the principle which plaintiff's counsel invoke, that it is the duty of the master to provide a safe place for his employés to work, is not applicable; that—

"That principle properly has reference solely to the adequacy of a structure or device that the employer has provided for use of the employé, and in or upon which the

employé has to do his work, or to the hazards which the employé may be subjected to through the employer's negligence in conducting operations on or about the place while the employé is at work."

If we correctly understand this contention, we think it makes for a rule much too narrow. A place may be rendered unsafe as well by being so placed with reference to adjacent objects as by inherent defects in the place or device itself. We have no hesitancy in saying that, if we leave aside the question of assumed risk for the moment, a railroad company which, without necessity, locates telegraph poles so near to the track over which its employés are required to operate its trains as to render it unsafe for such employés to operate the trains in the ordinary way, without meeting with injury from such structures, has failed in its duty to provide a safe place. *Walsh* v. *Navigation Co.*, 10 Or. 250; *Illinois Central R. Co.* v. *Welch*, 52 Ill. 183 ( 4 Am. Rep. 593 ); *Johnson* v. *Railway Co.*, 43 Minn. 53; *Houston, etc., R. Co.* v. *Oram*, 49 Tex. 341; *Chicago, etc., R. Co.* v. *Russell*, 91 Ill. 298 ( 33 Am. Rep. 54 ); *Whipple* v. *Railroad Co.*, 19 R. I. 587 ( 61 Am. St. Rep. 796 ); *Scanlon* v. *Railroad Co.*, 147 Mass. 484 ( 9 Am. St. Rep. 732 ); *Sweet* v. *Railroad Co.*, 87 Mich. 559; *Allen* v. *Railway Co.*, 57 Iowa, 623 ( 5 Am. & Eng. R. Cas. 620 ).

The employé is, however, held to assume the risk of injury from such structures as he knows of, or ought, in the exercise of common prudence, to be acquainted with, and the difficulty in any given case is chiefly in determining whether the obstruction belongs to this category. In applying the rule of assumed risks, the courts have not always been consistent, and different courts have reached different results on the same state of facts. A brief review of some of the cases may be of interest. In Massachusetts, in *Lovejoy* v. *Railroad Co.*, 125 Mass. 79 ( 28 Am. Rep. 206 ), it appeared that a signal post was placed 3 feet and 8 inches from the track, and plaintiff, an engineer, while leaning out of his cab, looking for a

signal, came in contact with it, and was injured. It appeared that the abutments of 46 bridges, numerous buildings, entrances to stations, and other structures on the line of the defendant's road, were the same distance from the track. These facts were known to the plaintiff, although he had not, previous to the injury, noticed this particular post. It was held that if there was any danger to the plaintiff, while he was in the performance of his duty, from the structures so placed, it was a risk he assumed. The court said, "He knew the manner in which the road was constructed, the proximity to the track of these structures, and the methods employed in the management of the trains." In *Fisk* v. *Railroad Co.*, 158 Mass. 238, it appeared that plaintiff, a freight brakeman, was injured by contact with an overhanging awning at a station. All the principal stations on the road had such awnings, and plaintiff knew there was an awning at the station where he received his injuries. It was held that he assumed the risk. The case of *Scanlon* v. *Railroad Co.*, 147 Mass. 484 (9 Am. St. Rep. 732), illustrates the distinction made by the Massachusetts court. Plaintiff, a brakeman, came in contact with a signal post $3\frac{1}{2}$ feet from the track. He had no previous knowledge of the proximity of this post or other objects to the track. Defendant showed that an examination of the permanent structures along the line of the road disclosed that several structures were as near the track as the post in question; but the court said:

"The danger, the risk of injury, which it is claimed the plaintiff assumed, was not the particular danger from the post which caused the injury, but the general danger from the structures and erections near the track. The plaintiff had no actual knowledge of the danger, and he cannot be held to have assumed the risk of it unless the character of the danger and the circumstances are such as to show that he ought to have known and appreciated it. The fact that it was incident to the employment is not sufficient. Peril from dangerous machinery, or appliances, or structures is incident to employment upon them,

but the risk is not assumed by the employé unless he knows the danger, or unless it is so obviously incident that he will be presumed to know it."

In *Illinois Central R. Co.* v. *Welch*, 52 Ill. 183 (4 Am. Rep. 593), the plaintiff, a brakeman, was injured by an overhanging awning. It was said by the court:

"There are many freight depots and station houses upon the line of the Central Railway, and it would be preposterous in us to say, or to ask a jury to say, that a brakeman engaging in the service of the company must be held to know whether or not there may be one among them whose roof or awning so projects over the line of road that a brakeman on a freight train, in the performance of his duties, would be liable to be swept from the train by collision with it."

See, also, case of *Chicago, etc., R. Co.* v. *Russell*, 91 Ill. 298 (33 Am. Rep. 54),—a case of an injury by a telegraph pole.

In North Dakota, in the case of *Boss* v. *Railroad Co.*, 2 N. Dak. 128 (33 Am. St. Rep. 756), it appeared that a switch target was located so near to the track that an employé was struck by it. The company was held liable. As to plaintiff's duty the court said:

"Nor can we say that plaintiff, in the ordinary exercise of his faculties, was bound to know the condition of that switch-stand. It is true that he had passed it upon this train nearly every day for two weeks, but he had no duty to perform in connection with the running of the train; nothing in any manner that would be likely to call his attention to the condition of this switch-stand."

In Wisconsin the test of liability seems to be whether the obstruction or structure dangerously near to the track was necessarily placed there. In *Kelleher* v. *Railroad Co.*, 80 Wis. 584, an employé was injured by coming in contact with a coal-shed 22 inches from the side of the car. The plaintiff was held entitled to recover. The court say: "It is objected that the true test is not whether it was 'unnecessarily' dangerous, but whether it was unreasonably dangerous. This contention cannot prevail.

It is settled in this State that the duty of the company is
to see that its tracks are not so obstructed as to render the
duties of its employés unnecessarily hazardous,"—citing
*Dorsey* v. *Construction Co.*, 42 Wis. 583, in which case
it was held that, although plaintiff had passed the struc-
ture every day for five months, the question of whether
he ought reasonably to have known of the danger was for
the jury. In *Scidmore* v. *Railway Co.*, 89 Wis. 188,
the court held that the maintenance of a clearance post
was not negligence, and that the plaintiff, knowing that
such posts were maintained by the defendant, could not
recover for injuries received by coming in contact with
one of them. The holding of the latter position is consist-
ent with all the cases, including those cited from Massa-
chusetts; but the holding that the maintenance of the
clearance posts so near the track was not negligence can
only be reconciled with the earlier Wisconsin cases on the
ground that such posts are *necessarily* placed thus close
to the track.

In Kansas the duty of the company to refrain from plac-
ing structures so near the track as to cause unnecessary
peril to the employé is maintained. The court, in *St.
Louis, etc., R. Co.* v. *Irwin*, 37 Kan. 701 (1 Am. St.
Rep. 266), recognizing the rule of assumed risk, say:

"The law, however, does not require that an employé
shall know of all defects or obstructions that may exist on
the road, or in the service in which he is engaged; and it
cannot be said that the peril in this case was so obvious
and patent that Irwin must have known it. He had a
right to assume that the company had done its duty, and
placed its track in such a condition that he could perform
his duties with reasonable safety."

In *Johnston* v. *Railway Co.*, 23 Or. 94, deceased was
a switchman. He was injured by being struck by a tar-
get pole so near the track as to strike him as he passed by
on the side of the car. A recovery by the executor was
sustained. As to assumed risk, the court said:

"It is not expected of a switchman that he should care-

fully measure the distance between a switch target and the rail. This is the duty of the master, and the servant has the right to assume that the target or other obstruction is at a reasonably safe distance, in the absence of anything to excite special apprehension of danger."

The same rule obtains in Texas. In *Bonner* v. *La None*, 80 Tex. 117, it was held that a railway company is responsible to one of its employés for negligently constructing a target so close to the track as to cause injury to the employé while in the line of his duty, if the employé could not reasonably have anticipated the danger. And, on the other hand, it is held that, if the employé knows of the conditions, he takes the risk. *Missouri, etc., R. Co.* v. *Somers*, 71 Tex. 700. In the latter case the court state the rule as follows:

"The employés of the company are not called upon to inspect the machinery, roadbed, or cattle-guards. It is the duty of the company to have all these inspected, and to know that they are reasonably safe, and the employé has the right to rely upon its discharge of that duty. But when he is aware that a large number of cattle-guards are dangerous, and in this regard they are substantially alike, so far as his knowledge extends, he must know better than to rely upon the safety of any of them."

In Indiana the rule is the same. In *Louisville, etc., R. Co.* v. *Wright*, 115 Ind. 378 (33 Am. & Eng. R. Cas. 370, 7 Am. St. Rep. 432), the case of *Illinois Central R. Co.* v. *Welch*, 52 Ill. 183 (4 Am. Rep. 593), is cited with approval, and the court add:

"A person contracting to work upon a railway as a brakeman assumes the risks ordinarily and properly incident to such service, but he does not, by such hiring, assume the risk of unusual dangers of which he has no knowledge, or of which he is not bound to take notice."

The same rule is maintained in Rhode Island. *Whipple* v. *Railroad Co.*, 19 R. I. 587 (61 Am. St. Rep. 796), is substantially on all fours with the case under consideration. Speaking of the duty of the plaintiff to know of the proximity of the telegraph pole to the track as affecting the question of assumption of risk, the court say:

"We do not think that the fact was sufficiently obvious. The difference between the distance which the pole stood from the track and the distance which would have been safe was only seven or eight inches. The plaintiff had never, before the accident, so far as appears, passed or attempted to pass the pole on the side ladder of a car. The only opportunities which he had had to judge of its proximity to the track were from passing it on foot and on the tops of moving cars in the course of his employment, neither of which situations would be favorable for estimating the distance of the pole from the side of a car moving along the track with sufficient accuracy to know whether or not the pole was safe, the margin of safety or danger being so slight a space."

In *Johnson* v. *Railway Co.*, 43 Minn. 53, which was a case of a signal post, the court held that the employé was not to be held to have assumed the risk, in the absence of notice, unless it was apparent. See, also, *Atlanta, etc., R. Co.* v. *Woodruff*, 66 Ga. 707.

Other cases might be cited, but it is believed that these cases from Illinois, Oregon, Minnesota, Texas, Massachusetts, Iowa, Wisconsin, Kansas, Indiana, Georgia, and Rhode Island sufficiently indicate the trend of authority. In a general way it may be said that the cases which deny liability rest upon the ground that the obstruction in the particular case was not a negligent obstruction, as in *Randall* v. *Railroad Co.*, 109 U. S. 478, and *Illick* v. *Railroad Co.*, 67 Mich. 632; or that the plaintiff, having previous knowledge of the situation, assumed the risk, as in *Pennington* v. *Railway Co.*, 90 Mich. 505, where there was actual knowledge; or as in *Manning* v. *Railway Co.*, 105 Mich. 260, and in *Missouri, etc., R. Co.* v. *Somers*, 71 Tex. 700, where he knew of similar obstructions, and is not held excused from the duty of discovering the particular one. The correct rule is tersely stated in 3 Elliott, R. R. § 1269:

"It seems to us that, where the employé has knowledge, or is chargeable with knowledge, of the existence and situation of such structures, he assumes the risk of dangers from them."

To say just when the servant not having actual knowl-
edge of the obstruction causing the injury is chargeable
with such notice is not always an easy task.  As we have
seen, if he knows that other like obstructions exist along
the way, this is notice; but, in the absence of such cir-
cumstances, we think that wrong is not to be imputed to
the employé for not assuming that his employer will un-
necessarily and negligently expose him to danger.  We
think this case was one for the jury.

It is claimed that error was committed in the admission
of testimony of medical experts.  Dr. Hume, Dr. Phip-
pen, and Dr. Perkins examined the plaintiff shortly before
the trial.  The testimony which they gave as to the ex-
amination, and what it disclosed, was not objected to.
A hypothetical question was then put, and it is contended
that, by the terms of the question, the witness was at liberty
to consider the subjective symptoms in giving his answer.
The question did not call upon him to do so, and no such
specific objection was made on the trial.  We think there
was no error in this ruling.

Some time after plaintiff received his injuries, and on
October 31, 1892, he signed a release reciting that he had
received certain injuries, as follows: "At Milwaukee
Junction, while riding on a ladder of car, was knocked
off by a post standing a little west of the road crossing,
cutting the side of my head, and bruising my shoulder;"
and, after reciting that the company denied liability, for
the purpose of determining and ending the question of
liability and to avoid litigation, in consideration of re-
employment by the company, the release proceeds: "I
do hereby waive and relinquish all claims that I may have
against the said company for damages for the aforesaid
injuries, and do hereby release the said company of and
from all claims for damages as aforesaid."  The recited
consideration for this release is "the re-employment by
the said company for such time only as may be satis-
factory to the said company."  The testimony shows that,
at the time when the release was signed, the plaintiff was

already again in the defendant's employ.   No change as
to the terms of employment was made, nor was the de-
fendant company bound to retain him in its employ for
any length of time whatever.   There was no consideration
for the release.   The case is, in this respect, very similar
to *Purdy* v. *Railroad Co.*, 125 N. Y. 209 (21 Am. St.
Rep. 736).   It is unnecessary to review the instructions
relating to this feature of the case.

A motion for a new trial was made, and error is as-
signed on the refusal to grant this motion.   It is argued
that the great weight of the testimony shows that the
plaintiff rode past the post in question a great number of
times.   If this fact were controlling, we should be strongly
inclined to accept the view of defendant's counsel that a
new trial should be awarded.   We do not, however, re-
gard the fact as conclusive of defendant's claim.   The
inference to be drawn from the fact was for the jury.

We discover no material error.   The judgment is af-
firmed.

MOORE, J., concurred with MONTGOMERY, J.   HOOKER,
J., concurred in the result.

LONG, J. (*dissenting*).   The plaintiff entered the ser-
vice of the defendant as a brakeman on March 22, 1892,
having previously had considerable experience in that line
of work on other roads.   He worked upon freight trains 9
days in March and 19 days in April, and on freight and
mixed trains 29 days in May, running between Detroit,
Pontiac, Holly, Owosso, and other western points, includ-
ing Grand Rapids.   In the performance of his duties as a
brakeman, he rode on the tops of box cars coming into all
stations, and in going to and fro between Milwaukee
Junction and the station at Detroit.   He went to Pontiac
in June, and while there worked on the Orchard Lake
Branch.   He returned to Detroit in August, and worked
on passenger trains between Detroit and Grand Haven
during that month, and from September 1st to September
14th.   On September 15th he left Detroit for Holly on a

freight train, and returned to Detroit on the morning of the 16th, when he went in on the "East Y," so called, and assisted in picking up 23 cars. These cars were taken off the east Y at 4:50 a. m., standard time, as the record shows. On the evening of the 16th of September he left Detroit for Owosso, with a train, and returned on the evening of the 17th. This train arrived at Milwaukee Junction at about 8:30 p. m. The conductor learned that there were some cars on the east Y to be taken to Detroit, and the train pulled down to Milwaukee avenue. The engine and two cars were cut off the train, and pulled over the switch that leads off the main track to the east Y. Plaintiff turned the switch, went back on the east side of the track, 4 or 5 feet distant from the east rail, giving his signals, with his lantern, to the fireman, as the track upon which the coupling was to be made was on a curve. He continued to signal the engine back until it reached the cars that were to be picked up on this Y. The coupling was made, the conductor gave the signal to go ahead, and the engineer pulled the cars out on the main line. The plaintiff, instead of getting into the cab of the engine, or walking to the switch, climbed on the ladder on the side of the car, and, as the train pulled out over the Y, came in contact with a telegraph pole that stood on the east side of the Y track, and about 4 feet distant from the track, and sustained the injuries complained of.

This pole was in the same position as when the plaintiff entered the defendant's employ, and had been in the same place for many years. The east Y was used to store cars that came off the different roads, destined for Detroit. It had been so used for a good many years, and no one had ever come in contact with the pole before, although trainmen had often ridden by it on the sides of cars, in the night-time as well as in the daytime. The plaintiff had frequently assisted in picking up and leaving cars at Milwaukee Junction, and in so doing had passed and repassed the pole in question. He passed the telegraph pole at least 50 times on trains before his injury. He had been in

on the east Y at least 10 times before, and had assisted each time in picking up cars on the Y. It is true that he denied ever having seen the pole, or that he had ever been in on the Y before; but the defendant's witnesses, corroborated as they were by the daily records kept by the conductors and the car-checkers, and by the books of the train-master, from which the plaintiff's pay-checks were made, which plaintiff admitted to be correct, made, as they were, by different persons in different departments and for different. purposes, and all agreeing, compel the conclusion that the plaintiff was on the Y as the defendant's witnesses testified, and had assisted in picking up 94 cars there before he was hurt. Thus it appears that the plaintiff had been in the defendant's service for nearly six months, and a considerable part of his time had been spent on freight trains running between Detroit, Grand Rapids, and intermediate points. The evidence shows that, in doing his work, he had stopped at all, or nearly all, of the stations along the defendant's line of road, to take on and put off cars, and that, in doing his work at the several stations, he must have become familiar with the structures, not only along the line of the main track, but on the side tracks and in the yards and stations of the line, if he was attentive to his surroundings, as it was his legal duty to be.

If the plaintiff could not, in six months, have made himself familiar with the location of structures such as awnings, freight platforms, cattle-chutes, coal-bins, side tracks, Y's, telegraph poles, and other necessary structures adjacent to the tracks and Y's at stations and in yards along the entire line of the defendant's road, such knowledge can never be presumed from lapse of time, coupled with opportunity to acquire it. The rules of the company, of which he had a copy, required him to examine all machinery, tools, cars, engines, and tracks before exposing himself to danger, and to take sufficient time to make such examination. There is no evidence in this record to show that the pole in question was nearer the track than many others, or than other structures in defendant's yards and

stations along its entire line.   This casualty occurred on a
side or Y track in the defendant's freight yard, and with
reference to such tracks a different duty to the servant
devolves upon the master than that with reference to the
main track, as we have held.   *Michigan Central R. Co.*
v. *Austin*, 40 Mich. 250; *Batterson* v. *Railway Co.*,
53 Mich. 125; *Hewitt* v. *Railroad Co.*, 67 Mich. 61;
*O'Donnell* v. *Railway Co.*, 89 Mich. 174.   We think
that the plaintiff's opportunities of knowledge of this pole
were such that he must be held to have known of its
existence and location.   The decisions of courts in different
States are not harmonious in applying the rule of assumed
risks.   Different courts have reached different results on
the same state of facts.   The cases in this State, however,
are quite uniform, and we think that this case is clearly
within the holdings of this court in *Illick* v. *Railroad
Co.*, 67 Mich. 632; *Pennington* v. *Railway Co.*, 90 Mich.
505; *Ragon* v. *Railway Co.*, 97 Mich. 265 (37 Am. St.
Rep. 336); and *Manning* v. *Railway Co.*, 105 Mich. 260.

In *Illick* v. *Railroad Co.*, *supra*, the negligence
charged was that the bridge was too narrow, and that, by
reason thereof, a brakeman was injured by coming in con-
tact with the side of the bridge while in the discharge of
his duty.   He had passed over the bridge a good many
times, but there was no evidence that he knew just what
the space was between the side of the car and the bridge.
Held, that he assumed the risk.   *Pennington* v. *Railway
Co.*, *supra*, was a similar case.   The deceased was a
brakeman engaged in switching cars, and was caught
between the side of a car and a building only 13 inches
distant, while descending on the side of a car.   He had
done work in the yard before, and in that way had be-
come familiar with the building, but there was no evi-
dence that he knew the exact distance between the side of
the car and the building.   Held, that he assumed the
risk.   In *Ragon* v. *Railway Co.*, *supra*, a brakeman
was injured in making a coupling on a side track that
was not properly ballasted.   The plaintiff testified that he

122 MICH.—13.

did not know of the hole. The evidence, however, showed that he had been in the employ of the defendant for some time, and that he had passed and repassed the yard and switch in question on the main track. Held, that he assumed the risk. It is difficult to distinguish this case, in principle and in its facts, from the present case. If a brakeman is negligent in failing to see a hole in a side track, while performing work on the main track, it is difficult to see why he should not be held negligent in failing to see a telegraph pole by the side of the track, that he had passed and repassed frequently, as in this case. In *Manning* v. *Railway Co.*, *supra*, the negligence charged was that a tree was permitted to stand too close to the track. The brakeman who was killed commenced working upon that particular train that morning. There was no evidence that he knew, or that he had had an opportunity to learn, the exact distance between the tree and the side of the car. It was held that he assumed the risk.

The following cases, decided by the courts of other States, sustain the view here taken: In *Lovejoy* v. *Railroad Co.*, 125 Mass. 79 (28 Am. Rep. 206), an engineer was injured by coming in contact with a signal post at the side of the track, 3 feet and 8 inches distant therefrom, while leaning out of the engine, and looking back to get a signal from the conductor. It appeared that he knew of the signal posts along the line, but that he had not noticed the one that caused his injuries. Held, that he assumed the risk. In *Fisk* v. *Railroad Co.*, 158 Mass. 238, a freight brakeman was injured by coming in contact with a wooden awning projecting from a passenger station. He had worked on that line of road for two years. He was acquainted with the station, and knew that there was an awning there. On a dark and rainy night he started to go up on the side ladder of a freight car that had come from another railroad, and in passing the station struck against the awning. The car was higher than others. He had ridden on such cars before. Held, that he assumed

the risk.   In *Thain* v. *Railroad Co.*, 161 Mass. 353, an
engineer was carried against a wooden post standing 4
feet from the track and 2 feet from the tender beam,
where he was at the time.   The post had been there a
week, and he had passed it daily, but did not know that it
was there.   The court said:

" It is necessary for railroad companies to put up struc-
tures near enough to their tracks for it to be possible for
persons upon the trains to come in contact with them.
* * * A company is not bound to give warning of
every such structure to every person employed upon its
trains.   There must be some point within the limit which
it is possible for a man on a train to reach at which the
railroad company has a right to build without notice, and
to assume that those on the trains will keep out of the way.
Every one knows that there is danger as soon as he gets
outside of the line of the train, when it is in motion."

In *Goodes* v. *Railroad Co.*, 162 Mass. 287, a brakeman
struck against a switch-stand that was close to the track,
and was knocked off the car and fatally injured, while un-
coupling freight cars at night.   He had been working for
the defendant nearly three months, had worked as a brake-
man on another railroad for several months previously,
knew his business, and was competent and intelligent.
He had passed over and by the switch, both by day and
by night.   Held, that he assumed the risk.   In *Austin* v.
*Railroad Co.*, 164 Mass. 282, a brakeman struck a gate-
post near the track, and was injured.   He had had occa-
sion to go by it in the course of his employment.   Held,
that he assumed the risk, whether he actually knew the
danger or not.   In *Content* v. *Railroad Co.*, 165 Mass.
267, a trainman standing on the side ladder of a moving
freight car came in contact with an unusually wide car
that was standing on a parallel side track, and was
injured.   He knew that it was customary to store such
cars on the side track, and the position of the tracks was
visible.   Held, that he assumed the risk.   In *Vining* v.
*Railroad Co.*, 167 Mass. 539, a brakeman, while ascend-
ing the side ladder of a moving freight car in the day-

time, came in contact with another car standing on an adjacent side track, and was injured. He had worked on the line for a year. He had not seen the other car, and testified that he did not think of looking. Held, that he assumed the risk. In *Bell* v. *Railroad Co.*, 168 Mass. 443, a brakeman came in contact with a pillar of a draw-bridge while descending the side ladder of a moving car at night, and was injured. The pillar was about 4 feet from the track. The plaintiff knew of the bridge. Held, that he assumed the risk of such dangers. In *Ryan* v. *Railroad Co.*, 169 Mass. 267, a brakeman, while descending from the top of a freight car, struck a picket fence on the top of a 4-foot·wall alongside the track, and was injured. The fence was 3 feet 9½ inches from the nearest rail. Held, that he assumed the risk.

In *Perigo* v. *Railway Co.*, 52 Iowa, 276, a baggage-man, while on a moving passenger car, came in contact with a coal platform that was within 7 inches of the car at one end and within 4½ inches of it at the other. He knew of the platform. Held, that he assumed the risk. In *Brown* v. *Railway Co.*, 69 Iowa, 161, a fireman came in contact with a snow bank that was close to the track, while his crew were cleaning snow from the track with a snow-plow, and was killed. The court said:

"He must be held to have the same knowledge of this danger as he had of the close proximity of cattle-chutes, coal-sheds, platforms, bridges, water-pipes, or other structures and appliances necessarily located in close proximity to the track, which may be passed in perfect safety so long as employés keep themselves within line of the cars in the train, but which are dangerous when an employé exposes himself to contact with them by swinging outside of the line of the train."

In *McKee* v. *Railway Co.*, 83 Iowa, 616, an experienced brakeman climbed down the side ladder of a moving freight car, and hung down, and looked under the car, in the performance of his duty. His head struck a wing fence, and he was killed. The fence was 3 feet and 10

inches from the rail, and was at about the same distance from the rail as other wing fences on the line.   Held, that he assumed the risk.

In *Gibson* v. *Railway Co.*, 63 N. Y. 452 (20 Am. Rep. 552), a conductor came in contact with the projecting roof of a depot building, and was injured.   The court say:

"When the deceased entered the employment of the defendant, he assumed the usual risks and perils of the service, and also the risks and perils incident to the use of the machinery and property of the defendant, as it then was, so far as such risks were apparent.   *   *   *   He could not call upon the defendant to make alterations to secure greater safety, nor, in case of injury from risks which were apparent, could he call upon his employer for indemnity."

In *De Forest* v. *Jewett*, 88 N. Y. 264, a yardman fell into a small sluice or ditch in the railroad yard, and was injured.   He had been employed in the yard for about two years, and knew of the existence of sluices and ditches in it; and, so far as could be determined by seeing them daily, he knew their width and depth, and the manner of their construction.   Held, that he assumed the risk.   In *Tuttle* v. *Railway Co.*, 122 U. S. 189, a brakeman was caught between cars by the drawbars' passing each other while attempting to couple cars on a curved track, and was killed.   The alleged cause of the accident was the sharpness of the curve.   Held that, as the perils were seen and known, he assumed the risk.   In *Randall* v. *Railroad Co.*, 109 U. S. 478, a brakeman, while working a ground switch for his train on one track, was struck by an engine passing on an adjacent parallel track, and injured.   Held, that he assumed the risk of the switch-stand being too near the adjacent track, and that "a railroad yard where trains are made up necessarily has a great number of tracks and switches close to one another, and any one who enters the service of a railroad corporation in any work connected with the making up or moving of trains assumes the risks of that condition of things."

In *Williams* v. *Railroad Co.*, 116 N. Y. 628, a freight brakeman, while standing on the top of a box car passing under a bridge, came in contact with the bridge, and was injured. He had passed under the bridge on trains daily for three weeks. Held, that he must have known that it was not of sufficient height to permit him to stand while so passing, and that he assumed the risk.

In *Pennsylvania Co.* v. *Finney*, 145 Ind. 551, a brakeman of six months' experience, while descending the side ladder of a car, came against a water-plug located so near the track that a person in the position he was in could not avoid it, and was killed. He had passed it almost daily during his employment. Held, that—

"It was his duty to observe his surroundings before attempting to go down the ladder, and, had he exercised ordinary care and prudence in this respect, * * * the accident would not have occurred. * * * The means which a person has of knowing that, under the circumstances, he will expose himself to peril, are deemed in law to be evidence of knowledge of that fact."

In *Ryan* v. *Railway Co.*, 10 Ont. 745, a brakeman of several months' service, while holding on to the side ladder of a moving car, came in contact with a switch target, and was thrown under the train and killed. The switch-stand had been erected in the yard before he commenced his service, so that he was aware of its proximity to the track. Held, that he assumed the risk.

In *Missouri, etc., R. Co.* v. *Somers*, 71 Tex. 700, a brakeman, while stepping down upon the rear platform of a caboose, in order to release the brakes on it, struck against a cattle-guard fence, and was injured. The plaintiff testified that he knew that several of the cattle-guards on the railroad were sufficiently near the track to strike the feet of a brakeman sitting upon the top of a car with his legs hanging down, but that he knew nothing of the one which caused the injury, except that it could not have been more than 10 inches from the car in order to strike him. Held, that he assumed the risk.

In *Scidmore* v. *Railway Co.*, 89 Wis. 188, a brakeman, in alighting from his train in the night-time, in the performance of his duties, struck against a "clearance" post, and was thrown under the wheels of a moving car and injured. Held, that the knowledge of the brakeman that posts were used along the line of the road imposed upon him the risk incident to the existence of the particular post in question, although he had no actual knowledge of its existence.

In *Boyd* v. *Harris*, 176 Pa. St. 484, a brakeman, while performing his duties on a train, came in contact with a cattle-chute on a siding close to the rail, and was killed. He had passed it daily for two months. Held, that he assumed the risk; that—

"The duty to observe and make himself acquainted with the obvious dangers to which his employment exposed him was on the deceased. The opportunity to observe and acquire a knowledge of these dangers had been enjoyed by him for many days. Under such circumstances, the fair legal presumption is that he had improved the opportunity to observe and discharge the duty towards himself and his employer which his service required of him. If this proposition be denied, then for how many more months must an employé pass a point of danger daily before the presumption will arise? Will it ever arise? Or must the question of actual knowledge be turned over to the jury to guess at in all such cases?"

There are cases cited from courts of other States which it may be said do not approve of the position taken by the courts in the foregoing cases. It will, however, be seen by an examination of the facts in each case, that the courts have refused to apply the rule of assumed risk because the servant did not know the exact danger, or had not had sufficient opportunity to learn of it. In *Scanlon* v. *Railroad Co.*, 147 Mass. 484 (9 Am. St. Rep. 732), the facts were that the distance between a signal post by the side of a railroad and a ladder on the outside of a car was one foot. A brakeman, on his first trip, did not know that there were erections so near, and was not informed

of the danger. They were, in fact, exceptional. It was held that the danger was not obviously incident to his employment; therefore the risk could not be said, as a matter of law, to have been assumed. In *Illinois Central R. Co.* v. *Welch*, 52 Ill. 183 (4 Am. Rep. 593), a brakeman was injured by coming in contact with an awning projecting over the track. The company was held to be negligent in this respect, and the court say that there was no reason for supposing that the plaintiff had acquired knowledge of the unsafe condition of this awning before he was injured, as he had only been two months upon the road, and, except upon two trips, had always passed this station in the night. *Chicago, etc., R. Co.* v. *Russell*, 91 Ill. 298 (33 Am. Rep. 54), is to the effect that leaving for months a telegraph pole near the track is negligence. Yet the court say in that case that there was no evidence that the deceased knew anything of this pole, or that he was ever required before to assist in switching cars off from this track. In *Boss* v. *Railroad Co.*, 2 N. Dak. 128 (33 Am. St. Rep. 756), the plaintiff had passed the switch-stand on this train nearly every day for two weeks, but he had no duty to perform in connection with the running of the train. The court say :

" Had he known of its existence, or had he been chargeable with such knowledge, perhaps it would have been negligence on his part not to have watched for and guarded against it."

In *Walsh* v. *Navigation Co.*, 10 Or. 250, a brakeman put his head 8 inches out of a car window, in the night-time, to see what was the cause of a certain noise in the running of his train, and his head came in contact with the timbers of a water-tank that was from 6 to 18 inches from the window sills of the car. The gauge of the railway had been recently widened, so as to bring the cars nearer to the timbers. The plaintiff had no knowledge of the proximity of the tank to the window, occasioned by the widening of the gauge. Held, that he did not assume the risk, as a matter of law. In *Johnston* v. *Railway Co.*,

23 Or. 94, a switchman had been employed in the yard only about two weeks. Held, that it could not be said, as a matter of law, that he was negligent. The court say: " While he must have known of the existence and location of this switch target, he may not have known from observation  *  *  *  that it was near enough to the cars to be dangerous."

In *St. Louis, etc., R. Co.* v. *Irwin,* 37 Kan. 701 (1 Am. St. Rep. 266), a freight-train conductor, while riding on top of his caboose, struck a brace that extended from the side-post to the top-beam of a bridge, and was injured. He had run over the road and through the bridge daily for three months preceding the accident, and knew that the bridge was constructed with overhead timbers. It did not appear that he had been on top of the cars more than once, in passing over the bridge, before the time of the accident. It was found by the jury that he had no knowledge or opportunity to know of the dangerous character of the bridge. Held, that whether he was negligent was for the jury.

In *Kelleher* v. *Railroad Co.,* 80 Wis. 584, a switchman struck against a coal-shed standing near the side track, and was injured. It did not positively appear that he ever had made this switch before. If he had ever done it at all, it was but a few times. The jury found that the shed was so close as to be unnecessarily dangerous, that deceased did not know of the existence of the shed at its distance from the track and cars, and that he had not the means of such knowledge. Held, that he did not assume the risk. In *Dorsey* v. *Construction Co.,* 42 Wis. 583, the rule was stated that the knowledge on the part of the servant should be of the precise danger to him from an obvious defect, in order to hold him to an assumption of the risk. The facts in that case were that the conductor of a freight train was injured, while climbing up the ladder of a freight car, by coming in contact with a cattle-chute erected near the track,—dangerously near, as the court say. The proof showed that he had

been employed for some months upon that part of the road; passed the chute during the term of his employment almost daily; knew the cattle-chute was there; and knew the exact location, with reference to the track, of two other chutes, similarly located, at adjacent stations. Yet the court stated that, while he may have known generally of the proximity of the chute in question to the track, it did not necessarily follow that he knew its precise distance therefrom, and consequently the precise danger.

In *Johnson* v. *Railway Co.*, 43 Minn. 53, the injury to the servant was caused by his coming in contact with a signal post erected in defendant's yard, and situate about 4 feet from the track. At the time he received the injury, he was climbing up the ladder of a box car. He had been employed as switchman in the yard for two weeks or more, passing this post many times each day. The court say:

"We are not prepared to say  *  *  *  that he knew, or should have known, if he used ordinary prudence, the danger of such an accident.  *  *  *  While he must have known of the existence and location of this post, he may not have known from mere observation, or unless his attention had in some way been specially called to it (situated, as it was, in the center, between the tracks), that it was near enough to the cars to be dangerous, but might be misled, unless he had made actual measurement or calculation."

In *Sweet* v. *Railroad Co.*, 87 Mich. 559, the injured servant was one of a crew of switchmen in the company's yard at Detroit, and his duties extended to all parts of the yard. His injuries were caused by coming in contact with a large shed of the defendant, located in the yard, near the side track, while he was ascending or descending a ladder upon one of defendant's cars which was being moved on such track. The shed had been there for five years; and the intestate, who had formerly been a brakeman, had been employed as a switchman in that yard for a month or six weeks. There was no direct evidence that he was ever on that siding before the accident, or that his

attention had been called to the dangerous proximity of the building, but there was evidence that cars were probably shipped in there once or twice a day.

In analyzing and discussing these cases, Bailey (Mast. Liab. p. 174) says:

"This case [*Sweet* v. *Railroad Co., supra*] was decided upon the somewhat peculiar ground that it was not his duty to inform himself of the danger to be apprehended from the defect until he had some reason to apprehend danger from it; that until then he might be influenced by the assumption that the master had regard for his duty, and would not negligently expose him to extraordinary peril.

"Was the rule applied in either of the foregoing cases? Rather, was it not evaded, or, more correctly speaking, was it not misapplied? Did not the injured employé in each of them have an abundant opportunity to ascertain the exact location of the structures with which he came in contact? It required no special skill or training to foresee that they were likely to occasion him harm. It was a part of the duty of the servants thus engaged to obtain a knowledge of such risks and dangers. We have seen, *ante*, that he must take ordinary care to learn the dangers which are likely to beset him in the service; that he must not go blindly at his work, when there is danger; that he must inform himself; that such is the law everywhere; that he must use reasonable care in examining his surroundings; that knowledge on his part will be presumed, if the defect is obvious.

"It cannot be questioned for a moment that these cases were not decided in accordance with the rule stated, but rather from a special rule, arbitrarily applied by the court, and so applied by ignoring the contract relations between the parties, and ignoring the rights of the master as a party to that contract. We have seen that the duty of the master in such case is not to see that the servant actually knows. He has a right to rest upon the probability that anybody would know what was generally to be seen by his own observation. And to assume for a moment that a switchman, employed in a yard for weeks, did not know the location of a building or of a post in plain sight, and which he passed many times a day; that he did not know its danger, simply because he may not have meas-

ured its distance from a track, when the only reasonable presumption is that he did not look at the time, or failed to remember,—is to disregard every reasonable inference. The master had a right to expect, when he placed so conspicuous an object before his servants, that they would observe it; would learn —would know—its precise danger to them. And, if he had such right to so assume, he could not be held to the duty of specially informing each employé that he had 100 or more signal posts, 100 or more cattle-chutes, 100 or more buildings of different sizes and of variable distances from his tracks (either main or side tracks), and specify to each such employé the exact distance in feet or inches each one was from the track. Such warning would be useless. No employé would pretend to remember the information as to each. His observation is a more perfect, safe, and certain means of information, and his own sense of duty and danger more suggestive of observation, than all the verbal or printed information the master could give."

Again, on page 180, he says:

" The contract, therefore, must be that risks and perils obvious to a person of ordinary understanding are embraced therein, and assumed by the servant, when the opportunity has existed for observation. Where there are no peculiar dangers, knowledge of the defect is knowledge of the danger. The danger of contact with a post or structure while on a moving train is a matter of common knowledge. As to such defects, the servant cannot be heard to say that, while they were apparent and obvious, yet he did not know or ascertain their precise location, or realize their apparent danger. Knowing them to exist, it is his duty to ascertain their precise location with reference to the performance of his duties. When the location is ascertained, the danger is manifest; it being the law and the contract that the servant ought to know that which was plain to be seen, and which it was a part of his duty to learn and know. How, then, can it be said that the jury are to determine whether or not he had knowledge?"

In this view of the law we fully concur.

In *Whipple* v. *Railroad Co.*, 19 R. I. 587 (61 Am. St. Rep. 796), a brakeman was knocked from a freight car, and injured, while climbing a ladder on its side, by strik-

ing a telegraph pole that stood about 3½ feet from the rail of the side track, but inclined somewhat towards the track, the space between the pole and the top of the car being about 15 inches, which was sufficient to permit the passage of a man if standing erect, but insufficient by 7 or 8 inches to allow of his passage while climbing a ladder. He had worked in the freight yard in making up freight trains for two or three months previously, and seems to have frequently passed the pole on foot, and on the tops of the moving cars, but had never attempted to pass it on the side ladder of a moving car. Held, that the danger was not so obvious as to charge plaintiff with knowledge of it. This, and like cases that may be found in the reports, we think, cannot be sustained upon principle, and leave anything of the rule of assumed risks.

There are many other errors assigned in the record, but we do not deem it necessary to consider them, as, in the view we take, they are immaterial.

The judgment should be set aside, and no new trial awarded.

GRANT, C. J., concurred with LONG, J.

ON REHEARING.

PER CURIAM. A majority of the court are of the opinion that the judgment in this cause should be reversed upon the ground of intemperate and improper language by counsel in the argument, and a failure on the part of the trial court to appreciate and perform his responsibilities and duties in the conduct of the trial.

The judgment is reversed, and a new trial ordered.