SAMUEL VINING *vs.* NEW YORK AND NEW ENGLAND
RAILROAD COMPANY.

Suffolk.   January 13, 1897. — February 24, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Railroad — Master and Servant — Action.*

A brakeman in the employ of a railroad corporation, who is experienced and has been working on the same road for a year, and who, while ascending the side ladder of a moving freight car in the discharge of his duty in the daytime, is injured by coming in contact with another car standing on a side track which was parallel with the main track, and which he could have seen, although he testifies that he did not think of looking, neither car differing in width or otherwise from ordinary box freight cars, cannot maintain an action against the corporation for his injury, if there has been no change in the position of either track since his employment.

TORT, for personal injuries occasioned to the plaintiff while in the employ of the defendant as a brakeman.   Trial in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

The accident occurred about three o'clock in the afternoon of April 11, 1893, at a point on the main track of the Norwich and Worcester division of the defendant, near Danielsonville station in Connecticut.

The plaintiff had been for ten years a freight brakeman in the employ of various roads, and for a little more than a year prior to the accident had been in the defendant's employ, all of the time on the Norwich and Worcester division.   For about eight or nine months previously to the accident his regular daily run had been on a freight train from Worcester to Norwich, the

whole length of the division, about sixty miles, and return. At the point where the accident occurred, there was a spur or side track leading from the main track and parallel therewith, being about three hundred feet in length, and on the easterly side of the main track. This side track was to accommodate certain coal and hay sheds belonging to private persons.

The plaintiff was engaged in his regular run from Worcester to Norwich, and the last stopping place before the scene of the accident was Putnam, Connecticut. As the train was leaving Putnam, the plaintiff was obliged to get on to a flat car to let off the brake, and, as he could not do it alone, he had to call the other brakeman to his assistance, and when they got the brake let off they were obliged to get on the top of the box car, where it was their duty to be, so that they could work the brakes and see the signals.

From the side track referred to northward, that is, in the direction from which the train was coming, the track was a straight line for a distance of at least a quarter of a mile, according to the plaintiff's testimony, and a mile and a half according to the testimony of the assistant engineer of the railroad. The means of getting upon the top of the box car were to go up a ladder on the side of the car, the rounds of the ladder reaching to within two or three inches of the end of the car which was nearest them. The other brakeman first climbed upon the top of the box car, and then the plaintiff followed. As the latter was climbing the ladder, he was struck in the back on the right side by an ordinary box car which was standing on the side track, receiving the injuries complained of.

At the time he was struck his head and shoulders were about up to the projection of the eaves of the car. The train was then going about twenty-five or thirty miles an hour, not quite as fast as usual.

The distance from the west rail of the side track at the point where the car was standing to the top of the east rail on the main track, upon which the train was travelling, was six feet. The width of the track from outside to outside of the rail at the top of the rail was five feet and two inches.

The distance between the body of the cars was two feet four and five eighths inches; and between the eaves of the two cars

it was one foot nine and three quarters inches.    The two cars in question did not differ in width or otherwise from ordinary box freight cars.

There were many other side tracks on the division of the railroad upon which the plaintiff worked, and the space between these sidings and the main track varied in different cases. In some cases the width was from seven to eight feet.

The plaintiff testified that he knew the side track was there, but knew nothing of its nearness; that since the accident he had measured other side tracks on the road, and the nearest one he measured was seven feet and an inch distant from the main track; and that he did not know of any other side track on this road that was as near to the main track as six feet.

On cross-examination, he testified that he knew there was a siding there; that the purpose of the siding was to put a car in there and leave it until it was discharged; that the purpose of that siding was usually to discharge coal; that he had seen cars on other sidings, but could not say that he ever saw a box car on that siding; that in getting from the platform car to the box car in front he stepped upon a little iron step at the end of the box car, and then reached around the corner and took hold of the side ladder; that in going around the corner a man would naturally face forward; that he could have seen a car standing on the side track without turning his head, but that he did not think of looking; and that he was in a hurry to get on top of the car.

George T. Sampson, assistant engineer of the defendant's railroad, testified that he had occupied that position since 1876, and during that time had been entirely familiar with the road; that there were standards among various railroads for the distance between the main track and side tracks; that at present on the defendant's railroad the standard in use was seven feet between rails, though on side tracks in yards they worked closer, in some places six feet, and in some places less; that the standards in use in recent years among railroads have been six feet, seven feet, and eight feet between the rails of adjacent main tracks or side tracks; that on the Norwich and Worcester division of the defendant's railroad a six-foot standard had been in use to some extent, and also a seven-foot standard; and that he

considered the six-foot standard between siding and main track a safe and common construction among railroads.

On cross-examination, he testified that seven feet or six feet between rails for a man that exercised due precaution was a distance in which an express freight train with a side ladder, and a person going up the side ladder, could pass in safety a track with a box car thereon.

The following requests for rulings were made by the defendant:

" 1. If the side track in question was at the same place with reference to the main track at the time of the accident as it was when the plaintiff began his employment on the railroad, he accepted the risk and cannot recover.

" 2. On the whole evidence, the plaintiff is not entitled to recover."

The judge refused so to rule; and the defendant excepted.

At the conclusion of the whole evidence, the defendant requested the judge to direct a verdict for the defendant, which the judge refused to do; and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*F. A. Farnham*, for the defendant.

*F. S. Hesseltine*, for the plaintiff.

ALLEN, J.   The present case is to be distinguished from those chiefly relied on by the plaintiff.   In *Ferren* v. *Old Colony Railroad*, 143 Mass. 197, the plaintiff was taken from his regular work, and was asked to help do something which was outside of the work which he was employed to do, and in an unusual place, and it was accordingly held that the danger to which he was exposed was something which he was not bound to anticipate, or to look out for.   In *Scanlon* v. *Boston & Albany Railroad*, 147 Mass. 484, a brakeman was hurt by coming in collision with a signal post by the side of the track.   It was his first trip.   He was unfamiliar with the road.   He was not informed or cautioned as to the danger, and had no reason to suppose that there were permanent structures so near the track.   On these grounds a distinction in his favor was made from *Lovejoy* v. *Boston & Lowell Railroad*, 125 Mass. 79, where the plaintiff was familiar with the road, and was held to have assumed the risk.

The present plaintiff was in the course of his regular and

usual employment. He knew of the existence of the spur track, and of its purpose and use. He was an experienced brakeman, and had been employed on the same road for a year, and had a general familiarity with it. The time of the accident was in daylight. The two cars in question did not differ in width or otherwise from ordinary box freight cars. The car on the spur track could have been seen, but the plaintiff testified that he did not think of looking. There was nothing unusual in the conditions existing at the time of the accident. Under these circumstances, if there had been no change in the position of either track since the plaintiff's employment, the defendant was not guilty of any breach of duty towards him. The case falls within the recent decisions of *Content* v. *New York, New Haven, & Hartford Railroad*, 165 Mass. 267; *Thain* v. *Old Colony Railroad*, 161 Mass. 353; *Fisk* v. *Fitchburg Railroad*, 158 Mass. 238; and *Lovejoy* v. *Boston & Lowell Railroad*, 125 Mass. 79, already cited. *Exceptions sustained.*