PETER RYAN *vs.* NEW YORK, NEW HAVEN, AND HARTFORD
RAILROAD COMPANY.

Berkshire.     September 15, 1897. — October 20, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Personal Injuries — Railroad — Assumption of Risk — Action.*

If a brakeman on a night freight train, who often has gone over the route by night, is injured, while descending from a moving car in the discharge of his duties, by coming in contact with a fence three feet and nine and one half inches from

the nearest rail of the track and built on top of a retaining wall running parallel to and within the original survey of the railroad, he cannot maintain an action against the corporation for his injuries.

Tort, for personal injuries occasioned to the plaintiff while in the employ of the defendant as a brakeman. Trial in the Superior Court, before *Blodgett*, J., who allowed a bill of exceptions, in substance as follows.

The evidence showed, and it was admitted, that on March 10, 1893, the plaintiff was in the employ of the defendant on that portion of the defendant's railroad known as the Danbury and Norwalk Division in the capacity of head brakeman on the " night freight," so called, which ran from Danbury to Wilson's Point, beyond South Norwalk in the State of Connecticut; that on that day the train left Danbury at about 7.30 P. M. and reached Norwalk a little after nine o'clock; that at Norwalk the train picked up one or more cars, and left soon after for South Norwalk; that there was between Norwalk and South Norwalk a side track on the easterly side of the main track, called the " dock siding "; that on that night the conductor had orders to put his train on the siding; that southerly of the switch leading to the siding there is an up grade to the main track for some distance, so that cars cut off from the engine will run in on the siding of their own motion; that it was the intention of the conductor to put his train on the siding by cutting off the cars behind the engine; that southerly of the siding Ann Street crosses the main track from east to west, and southerly of Ann Street and beginning at the crossing, there is a bank or retaining wall extending along the easterly side of the main track, north and south, for about one hundred feet, varying in height from two feet and four inches at the end by the crossing to four feet and nine and one half inches at the southerly end; that on top of the wall, beginning at the southerly end thereof, was a part of an old picket fence running along the wall some nine feet towards the north, the wall and fence being within the limits of the original survey of the railroad, but there was no evidence that they were constructed or maintained by the defendant; that on the night in question, in order to get the train over the switch leading to the siding, the engine was run up to and opposite the fence; and that the plaintiff, at a point opposite the fence, received the injuries complained of.

The plaintiff testified, among other things, as follows: "Some time in November, 1892, I commenced to run as a brakeman on the night freight. I ran on this train every night except Sundays, up to March 10, 1893, and I never ran on any other train over that division. We left Norwalk for South Norwalk with eighteen cars behind the engine, and the two cars in front of the engine. At Norwalk I received orders from the conductor to cut off the train at the "dock siding." He told me they would cut off the buggy on the main track, pull the train down over the switch, then I was to get down and pull the pin behind the engine. I rode as it was my duty to do, being head brakeman, on the cars in front of the engine. They cut off the buggy on the main track, pulled down over the switch and I received the signal to cut off behind the engine. After I received the signal, I got down off the rear end of the car, which was the car next in front of the engine, by a ladder which is in the centre of the end of the car, on to a platform which extends along the end of the car. I then moved along this platform to the left hand corner, reached around this corner, took hold of a handle or grab iron on the side of the car, placed my left foot on a little step something like a horse shoe on the side of the car, then swung around the corner, intending to put my right foot into a loop or stirrup step under the car and to then drop down on the ground. As I swung around the corner to put my right foot in the step, I was struck in the left side by a stringer of a picket fence which stood on top of a wall beside the track, knocked off the car, fell on my hip on the wall, and from the wall fell forward upon the track, my right arm falling across the rail in front of one of the driving wheels. The driving wheel went over my arm and crushed it so that it was amputated that night, and the connecting rod struck me in the back. After I got out of the hospital, I went to the place where I was injured, and I found the picket fence leaning over towards the track, I should think three or four inches. I went there again some time after, and I found the fence had been straightened back even with the wall. The post was decayed at the bottom, and a wedge had been driven down beside it. I had never been over the railroad from Danbury to South Norwalk in the daytime, and had never seen that fence or wall before. Only once before, so far as I can

recollect, have I helped to put a train on that siding; there were at that time no cars in front of the engine; I was brakeman on the car next behind the engine, and we did not run down so far south of the switch as we did the night I was injured. I got off the car in the usual way. There is no printed rule as to which side you are to get off when the train stands on a curve. When the train stands on a curve and you have occasion to look back, an experienced man would get off on the inside of the curve so he could see the men back of him."

On cross-examination the plaintiff testified that he never noticed an electric light near the place of the accident.

William B. Palmer testified that he was a civil engineer and surveyor, and had made a survey and plan of the track, fence, and wall where the plaintiff was injured; that the fence was an old one and in a dilapidated condition; that the pickets were off and the stringers stuck out beyond the post; and that the distance from the face of the stringers to the nearest rail was three feet and nine and one half inches.

Ward Miller, who was a brakeman on the train when the plaintiff was injured, and John F. Keeler, who was formerly employed by the defendant as a fireman on this division of its railroad, both testified that the fence leaned over the wall; and the former witness also testified that he had never noticed an electric light near the place of the accident.

John Kilcourse, called as a witness by the defendant, testified that he had been road master for the defendant on this division for nine years; that he had never noticed that the fence leaned over the wall, and had made no changes in the fence since the accident; and that there was an electric light on Ann Street, near the place of the accident, but he could not say that it was lighted.

Albert C. Weiler testified for the defendant that he was the conductor on the train in question, and was familiar with the place of the accident; and that there was an electric light on Ann Street about 125 to 150 feet from the fence, and it was lighted on that night.

At the close of the evidence, the judge, at the defendant's request, directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*C. E. Hibbard & J. C. Chamberlain* (of Connecticut), for the plaintiff.

*A. C. Collins*, for the defendant.

HOLMES, J.    The fence which the plaintiff struck was a permanent visible structure, and under our decisions did not constitute one of those unusual dangers to which an employee who has not taken the risk of them with actual knowledge of their existence has a right to assume that he will not be exposed by entering an employment.    It was not near enough to the track for that.    It was three feet and nine and one half inches from the nearest rail.    In *Lovejoy* v. *Boston & Lowell Railroad*, 125 Mass. 79, the obstruction was a little nearer the track, and the plaintiff had no actual knowledge of it.    If opportunity to observe the danger be material, the plaintiff had had chance enough to do so.    *Bell* v. *New York, New Haven, & Hartford Railroad*, 168 Mass. 443, and cases cited.          *Exceptions overruled.*