JAMES BENCE *vs.* NEW YORK, NEW HAVEN, AND HART-
FORD RAILROAD COMPANY.

Suffolk.    November 21, 1901. — April 3, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER,
HAMMOND, & LORING, JJ.

*Conflict of Laws. Jurisdiction. Negligence,* Employers' liability, fellow servant, assumption of risk.

In an action of tort by a resident of Connecticut against a Connecticut corporation having a usual place of business in this Commonwealth for an injury sustained

in Connecticut, it was assumed, that the Massachusetts courts had jurisdiction and that the plaintiff was entitled to recover here if he could have done so in Connecticut.

In an action by a freight brakeman for the alleged negligence of the railroad company employing him in leaving a car on an intersecting track so near the junction that the plaintiff on the step of a passing car was struck by it, it appeared, that the injury occurred in Connecticut and that by the law of Connecticut one servant who exercises control over another is regarded not as a fellow servant but as a vice principal, and that there was such a person in charge of the yard where the plaintiff was injured, but there was no evidence to show who put the car that did the injury too near the junction or whether it was done by one who strictly was a fellow servant or by one in authority. *Held,* that on this evidence a verdict rightly was ordered for the defendant.

The danger from the permanent overcrowded condition of a railroad freight yard from its being inadequate for the business of the road is a risk which a freight brakeman working there assumes.

TORT by a freight brakeman employed by the defendant for injuries alleged to have been caused by the negligence of the defendant in placing and leaving a car on an intersecting track so near the junction with the track on which the plaintiff's car was moving that the plaintiff was knocked from the car and injured, with a second count, alleging that the defendant provided a freight yard insufficient in capacity and area and so laid out as to be dangerous, and negligently allowed cars to stand too near the junction of intersecting tracks so as to make it dangerous for trains to pass, whereby the plaintiff was injured. Writ dated June 10, 1896.

In the Superior Court the case was tried before *Lilley,* J., who at the close of the evidence ruled that the action could not be maintained and ordered a verdict for the defendant. The plaintiff alleged exceptions, which after the resignation of *Lilley,* J., were allowed by *Fessenden,* J.

The case was argued at the bar in November, 1901, and afterwards was submitted on briefs to all the justices.

*W. B. Sullivan,* ( *C. W. Ford* with him,) for the plaintiff.

*C. F. Choate, Jr.,* for the defendant.

LATHROP, J. This is an action of tort by a person who is described in the writ as of New London in the State of Connecticut, against a Connecticut corporation, having a usual place of business in this Commonwealth, for an injury sustained by him in Connecticut. We assume for the purposes of the case that the court has jurisdiction, and that the plaintiff is entitled

to recover if he could have recovered in Connecticut.  *Walsh* v.
*New York & New England Railroad*, 160 Mass. 571.   We fur-
ther assume that the plaintiff was in the exercise of due care.

The accident occurred in the defendant's freight yard at New
London, at four o'clock in the morning of November 6, 1895.
In this yard were two main tracks, and east of them were three
side tracks, numbered, respectively, five, six and seven.   There
were also four other side tracks.   Tracks six and seven united
at a switch and frog, and further along joined five, and then ran
into one of the main tracks.

The plaintiff had been in the employ of the defendant for
four years.   During this time he had worked all around this
yard and another one across the river.   He was familiar with
both yards, and was the most experienced man in the crew to
which he belonged, except the conductor.   For three years be-
fore the accident his work was at night.   During the time he
was at work in the yard, there had been no change in the posi-
tion of the tracks, although for the last two years before the
injury all of the tracks had been very crowded, and there had
been two switching crews at work night and day.

The train on which the plaintiff was the rear man had backed
down on track seven, to couple on to one or more cars.   The
conductor and the plaintiff were on the ground.   The signal
was given to start ahead.   There was a ladder on the end of the
last car, and grab handles on the side, and also a step.   The
conductor got on first.   Then the plaintiff swung on to the step,
and reached around and took hold of the ladder.   While in this
position, we assume, although this is not very clear on the evi-
dence, that he was struck by a car which had been left standing
on track six, too near the junction of the two tracks.

The first count of the plaintiff's declaration goes upon the
ground that the defendant was negligent in so leaving the car
on track six.   At the trial the contention was that one Dunn,
the yard master who had general charge of the yard, was the
person thus guilty of negligence; and to take the case out of
the rule of fellow servants, it was contended that in Connecticut
a servant who had control and direction over other servants was
regarded as a vice principal, for whose negligence the general
employer would be responsible.   To prove the Connecticut law

on this subject, the plaintiff put in evidence the cases of *Wilson v. Willimantic Linen Co.* 50 Conn. 433, *Darrigan* v. *New York & New England Railroad,* 52 Conn. 285, *McElligott* v. *Randolph,* 61 Conn. 157, *Gerrish* v. *New Haven Ice Co.* 63 Conn. 9, and the testimony of Mr. Waller, an attorney at law, practising in Connecticut. We do not think that Mr. Waller's testimony adds anything to what appeared in the cases put in evidence, for he testified: " I think that the law on this point is completely stated in those four cases. I think those four cases are the cases that constitute the Connecticut authority on this point." Nor do we deem it necessary to consider these cases at length. It is enough to say that they show that while the rule of fellow servants prevails in Connecticut, one who exercises control over another is not regarded as a fellow servant but as a vice principal.

The question remains whether there was negligence on the part of Dunn. An examination of the evidence fails to disclose any. There is no evidence in the case to show who put the car that did the injury so near the switch that the plaintiff could not pass in safety, nor how long it had remained there. Nor does it appear that it was not placed there by one who in Connecticut would be regarded as a fellow servant. The plaintiff testified that, while the crowded condition of the yards existed, he never saw any cars the way they were then. So that it was not a customary thing to place cars on a side track so near another track that they would do injury. The plaintiff further testified: " He had seen Dunn once or twice a week in the different yards, giving directions about where cars were to be moved. Of course they were moving cars every day, and making a great many moves every day, and there were a great many moves of cars that Dunn did not direct at all. A great deal of the time the switching gang would place cars as the conductor said, or as the men left them. What Mr. Dunn did was, if he wanted particular cars placed in particular places, he would say so, or if he wanted particular cars, he would say so. Other than these particular instances, the men would go about their work, doing it in the ordinary way they were accustomed to, pulling cars in and pushing them out, making up trains and moving cars about. In such a case as this, for instance, if the last car was cut off and

the plaintiff had ridden it down, he would have got some general direction from the conductor on what track it was going, and he would ride it down and leave it in such place as he thought proper. That was the way the work was ordinarily done."

On this evidence we do not see how any negligence can be imputed to Dunn, and the plaintiff has failed to sustain his proposition that the placing of the car on track six was the direct result of the exercise of authority, and was not the act of a fellow servant.

It is suggested that the case of *Dacey* v. *Old Colony Railroad*, 153 Mass. 112, governs this case. In that case it was said that from the testimony it might be inferred by the jury that the car which was left too near the junction of the two tracks, and which did the injury, was left there by some one in authority. In the case before us the evidence leaves it entirely uncertain whether the car was left too near the junction by one who was strictly a fellow servant or by one in authority.

The second count charges the defendant with negligently and carelessly furnishing and providing a freight yard insufficient and inadequate in capacity, in allowing cars to stand too near the junction of intersecting tracks, and in not warning the plaintiff of the danger from such proximity of cars.

Taking up the last two allegations first, there was no evidence that cars were allowed to stand too near the junction of intersecting tracks. The only evidence was that on this particular night a car was found so left. The plaintiff was an experienced man, and did not need to be told that if a car should be left too near the junction of the two tracks, and he should be on the outside of his car, he might be hurt. He knew this as well as any one.

The first allegation of this count remains to be considered. Mr. Waller testified that the law in Connecticut required the company to furnish a safe place for an employee to work; and that in this respect he understood the law to be general in other States. This view of the law finds support in remarks made in some of the cases put in evidence; but we do not understand what is said as laying down any rule of law peculiar to Connecticut. The same rule has been stated here. It would seem, however, that there is nothing in the evidence to warrant the

jury in finding that there was any peculiar danger in the permanent condition of the yard, or that the yard was laid out differently from other freight yards, with main tracks and side tracks. While the cars were crowded, there was room left near the junction. Thus Loomis, a witness for the plaintiff, testified that when he said that the tracks were "jam full all the time," he meant that they got them as full as they could possibly be; and he added: "They do that everywhere. They did in this yard just as they did everywhere else, and handled cars in the same way." We have already noticed the plaintiff's testimony to show that the crowding of cars on track six was exceptional that night.

If, however, we assume that there was some evidence of danger in the permanent condition of the yard, this condition had remained the same during all the time that the plaintiff worked there, and was known to him. If he chose to work there knowing the permanent condition to be dangerous, he assumed the risk. In *Randall* v. *Baltimore & Ohio Railroad*, 109 U. S. 478, 482, it is said by Mr. Justice Gray: "A railroad yard, where trains are made up, necessarily has a great number of tracks and switches close to one another, and any one who enters the service of a railroad corporation, in any work connected with the making up or moving of trains, assumes the risk of that condition of things." This is the well settled law in this Commonwealth. *Coombs* v. *Fitchburg Railroad*, 156 Mass. 200, and cases cited. *Fisk* v. *Fitchburg Railroad*, 158 Mass. 238. *Goldthwait* v. *Haverhill & Groveland Street Railway*, 160 Mass. 554. *Thain* v. *Old Colony Railroad*, 161 Mass. 353. *Goodes* v. *Boston & Albany Railroad*, 162 Mass. 287. *Austin* v. *Boston & Maine Railroad*, 164 Mass. 282. *Content* v. *New York, New Haven, & Hartford Railroad*, 165 Mass. 267. *Vining* v. *New York & New England Railroad*, 167 Mass. 539. *Bell* v. *New York, New Haven, & Hartford Railroad*, 168 Mass. 443. *Dacey* v. *New York, New Haven, & Hartford Railroad*, 168 Mass. 479. *Ryan* v. *New York, New Haven, & Hartford Railroad*, 169 Mass. 267. *Whelton* v. *West End Street Railway*, 172 Mass. 555.

We find nothing to the contrary in the Connecticut cases, and in the absence of evidence the common law of that State must be considered the same as ours.

This view of the case renders immaterial the offer of proof by the plaintiff, which was excluded, that the vice-president of the defendant said at a hearing before the railroad commissioners, three months after the accident, when he asked for a right to condemn land, that the freight yard was, and had been for a long time, inadequate for the business of the railroad, and that the yard was dangerous and had been in that condition for three years.

*Exceptions overruled.*