LEWIS C. PAGE, Respondent, v. ST. JOSEPH RAILWAY, LIGHT, HEAT and POWER COMPANY, Appellant.

### Kansas City Court of Appeals, December 6, 1909.

1. **STREET RAILWAYS: Master and Servant: Negligence of Fellow Servant.** The conductor of an open street car while collecting fares endeavored to pass outside of a passenger standing on the running-board at a time when the car was passing a loading dock where teams customarily stood near the track, and was struck by a team attached to a wagon which was nearer the track than customary; the motorman sounded no gong to warn the conductor nor did he slow up the car as his duty required; *held*, that the motorman was negligent in failing to observe the danger and give warning thereof or take steps to prevent it.

2. ———: ———: **Contributory Negligence.** The obstruction was of an unusual and temporary nature, and it was a question for the jury to determine whether plaintiff was negligent in failing to look ahead for an obstruction and in relying on the vigilance of the motorman to discover and warn him of peril.

3. **EVIDENCE: Conflicting: Finding of Jury.** Where there is conflicting evidence as to whether the injuries were caused by being so struck or by an independent disease the finding of the jury will not be disturbed.

4. **INSTRUCTIONS: Additional: More Comprehensive.** Although an instruction was given covering defendant's theory of the case it was error to refuse a more comprehensive and forcible instruction which correctly defined the issue of contributory negligence.

Appeal from Buchanan Circuit Court.—*Hon. Lucian J. Eastin,* Judge.

REVERSED AND REMANDED.

*R. A. Brown* for appellant.

*Mytton & Parkinson* for respondent.

BROADDUS, P. J.—This is a suit to recover damages for personal injuries alleged to have been sustained by plaintiff while in the employ of defendant.

The defendant at the times hereinafter mentioned, among other things, was engaged in the business of operating street cars in the city of St. Joseph. On the 3d day of July, 1908, plaintiff was acting in the capacity of conductor on one of defendant's cars, and Fred Hagan was the motorman. Attached to the motor car upon which plaintiff was acting as conductor, was what is called a trailer upon which there was another conductor. The cars were open cars with footboards extending along the sides of the car for the use of passengers in boarding and alighting from them.

On the date mentioned when it is alleged that plaintiff sustained his injuries both cars were crowded and many passengers were standing on the footboards on the east side of the motor car. The car was going west upon Francis street before turning north on Main street. And just north of Francis street, on the east side of Main street was located the Artesian Ice and Cold Storage Company. The sidewalk west of the building of the ice company had been appropriated by that company and raised about four feet, and was used as a loading dock. The distance from the sidewalk or loading place to the east rail of defendant's track was seventeen feet and eight inches. All wagons delivering ice for the ice company and all wagons obtaining ice therefrom backed up against the loading dock, with the heads of the horses attached, turned west toward the railway

tracks. Some of the wagons were so large that the heads of the horses had to be turned either north or south in order that the cars might have room to pass. Wagons stood along the place indicated at all hours of the day. Plaintiff was well acquainted with the conditions at the time mentioned and it was his duty to keep a lookout in passing it, for the safety of the passengers. On the day mentioned plaintiff was engaged in collecting fares from passengers upon the motor car. He had commenced at the front end of the car and was working backward to the rear walking along the running-board. As he would come to a passenger standing upon the footboard he would take hold of the upright handholds on the side of the car and swing around on the outside of the passenger. While so engaged and while the car was passing in front of the ice plant he attempted to swing around a passenger standing upon the running-board, and in so doing came in contact with a wagon which was backed up against said loading dock.

The plaintiff seeks to recover on the alleged negligence of the motorman, in running the car at a high rate of speed without slowing up or giving any warning of the approach of the car to the wagon which was in such close proximity to the track as to endanger the passengers and the conductor upon the running-board. The wagon against which defendant struck was not one of the size of the wagons that usually stood at the place, but was of unusual length, from two to four feet longer than the ordinary wagon.

A witness by the name of John Charles who had been in defendant's employ was called to testify in the case. He stated that: "In case of obstacles on the track or near the track where they are liable to strike the property or passengers or the conductor in the performance of his duties, he should slow up and sound the gong and attract the attention of the pasengers or conductor, and if it is close enough he should stop."

He testified that the first duty of a conductor is

to collect fares.   He was then asked what were his duties with respect to looking after the safety of the passengers and his answer was:  "Why, if he sees danger to notify them."   Plaintiff testified that:  "The duties of a motorman are to slow up the speed of the car when a wagon is close, or if there is danger of any description to sound the gong and stop;" and that the object of sounding the gong was to give warning to passengers and conductor or any one on the running-board that there was danger.

Plaintiff's evidence tends to show that the speed of the car at the time was from twelve to fifteen miles an hour and the motorman gave no warning of the proximity of the wagon to the track and did not slow up the car.

The defendant claims that plaintiff's injuries were the result of a loathsome disease and not attributable to being struck by the wagon in question, and is still insisting that such was the case; but in view of the fact that plaintiff introduced evidence going to show that his injuries were occasioned by having been so struck, we will not go into the matter, it being a question solely for the jury.

The plaintiff recovered a judgment for $1,000, from which defendant appealed.

Appellant at the close of the evidence submitted an instruction in the nature of a demurrer to plaintiff's case which the court refused.   This action of the court is assigned as error.

The theory of the appellant is that as there was room for the car to pass without injury to passengers on the running-board that there was no necessity for the motorman to slow the speed of the car or to give any warning, and that plaintiff's injury if any was his failure to look out for his own safety.   In other words that under the circumstances the motorman owed plaintiff no duty to look out for the safety alone of the conductor.   It is true that plaintiff was familiar with the situation ordinarily existing at that particular place and knew that wagons were liable to be there in close

proximity to the track, but at the same time it must be conceded to him, that under such ordinary conditions there was no danger to be apprehended either to himself or passengers on the running-board. It was the condition brought about by a wagon of unusual dimensions that stood closer than the ordinary ones to the track that caused the injury. While it was clearly his duty to look out for his own safety he had the right also to rely upon the motorman performing his duty. While in the performance of his duty in collecting fares from the passengers his attention would necessarily, more or less, be diverted from looking out for danger to passengers and himself, at which time he would have to rely on the vigilance of the motorman to discover such danger and to guard against it by giving warning of its approach or by some other means suitable to the purpose. Unless we are forced to the conclusion that it was the unqualified duty of the plaintiff to have first looked ahead for danger before he swung around the passenger in his progress of collecting fares the contention of appellant must be denied.

We are satisfied that appellant's contention is not sound, for the reason that under the conditions as they ordinarily existed there was no danger. While perhaps his knowledge of ordinary conditions did not excuse him from the responsibility of looking out for his own safety at all times, yet we think it certainly had an important bearing on the question of whether he was in the exercise of reasonable care at the time, which is usually a question for the triers of fact.

In Savage v. Rhode Island Co., 67 Atl. Rep., 633, it is held, that where a conductor had knowledge of an electric pole near the track by which he was struck while on the running-board collecting fares, the plaintiff could not recover. And a similar holding will be found in Hall v. Railway (Mass.), 59 N. E. 668; Ryan v. New York Railroad, 169 Mass. 267, 47 N. E. 877. In all these cases the obstructions were permanent and within the

knowledge of the injured, for which reason we do not think that they control the question.

Other courts however hold differently. The Supreme Court of Kansas holds that, where the conductor in the performance of his duties was obliged to be on the running-board of a car and was struck by a pole near the track, it was a question of fact for the jury whether or not he was in the exercise of reasonable care at the time. [Hoffman v. Railroad, 75 Pa. R. 1117.] And so it is held in Texas, where a conductor under similar circumstances was injured by a pole too near the track. [Houston Electric Co. v. Robinson, 76 S. W. 209.] And so it is held in Kentucky. [Finley v. Louisville Railway Co., 103 S. W. 343.] And in Illinois in South Side Elevated R. Co. v. Nesvig, 73 N. E. 749. These later cases are based upon the theory that it is the duty of the defendant under the circumstances to furnish its employees a reasonably safe place in which to perform their work. The circumstances of the case at bar are materially different from those supra, in that the obstruction which caused the injury was not of a permanent character, but decidedly temporary. Here the peril arose from the isolated instance of a wagon of unusual dimension temporarily placed too near defendant's track. It was not known to either plaintiff or defendant's employees previous to the time of the injury. It was like any other thing that might occur at any time, the presence of which could not be anticipated and removed in time to have averted the danger. This brings us back to the real question, was the motorman derelict in his duty in failing to observe the danger and to have given warning of its existence and used all reasonable means in his power to have averted it? Under the proof we have no hesitation in saying that there was evidence tending to show that the motorman was guilty of negligence in failing to observe the danger and failure to give warning of its existence and endeavor to avert it. And while the law imposed upon the plaintiff, as conductor, the duty to use

all reasonable diligence to protect himself from danger, yet we believe under the proof it was a question of fact which should have been left to the jury whether he failed in that duty to himself, and thereby contributed to his own injury. The reports of this State are pregnant with opinions that the question of contributory negligence, as a rule, is a question for the jury. Each case must be determined upon its own merits, therefore precedents form no unerring guide for the court in any other case.

The defendant asked the court to instruct the jury on the question of plaintiff's negligence as follows: "You are instructed that plaintiff had no right to rely solely upon any obligation which may have been imposed upon the motorman operating defendant's car to warn plaintiff of any threatened danger, but it was plaintiff's duty to exercise ordinary care to look out for his own safety, and if you believe from the evidence that plaintiff failed to exercise such ordinary care to look out for his own safety at the time he was injured, and that such lack of ordinary care contributed directly to the injuries sustained by plaintiff he cannot recover, and your finding will be for the defendant." The court refused to so instruct which was error. Although instruction numbered three given for defendant correctly set forth its theory of the case, yet it was not as forcible and comprehensive as that refused. And as we cannot say the evidence so greatly preponderated in favor of the plaintiff, that the judgment was for the right party, we believe the error was prejudical and that perhaps if the instruction had been given the finding of the jury might have been for the defendant. Reversed and remanded. All concur.