LEONARD M. CROSS vs. BOSTON AND MAINE RAILROAD.
SAME vs. SPRAGUE, BREED AND BROWN COMPANY.

Essex.    November 30, 1915. — February 12, 1916.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence*, Employer's liability, In railroad yard on premises other than those of railroad corporation, Violation of usage, Want of light.   *Usage.*

A railroad company is under no duty to point out to an experienced brakeman in its employ the existence, in a railroad yard on property of a coal company where the brakeman was in the course of his employment, of a post about three feet from a track, nor to warn him of its existence; and, since the enactment of the workmen's compensation act as before, if it appears that the post was placed, constructed and maintained by the coal company, there can be no recovery from the railroad corporation, not a subscriber under the act, in an action by such an employee against it for injuries caused by his being crushed in the night time between the post and a coal car upon which he was in the course of his employment, although such injuries were due to ignorance resulting from a lack of instruction or warning as to the post and by the dangerous condition of the premises arising from its maintenance where it was.

Nor, under such circumstances, where it also appears that one cause of the accident was the fact that a light, which customarily had shone upon the post against which the plaintiff was crushed, had been suffered to be unlighted, can the railroad company be held liable for the injuries if the coal company had undertaken the duty of keeping the yard lighted.

A coal company, which maintains as a part of its premises a yard containing tracks connecting with a railroad and used for transporting coal to and from its premises, is not liable for injuries received by an employee of a railroad corporation who, when on the premises in the course of his employment, is crushed in the night time between a freight car upon which he is riding and a post which supports an overhead structure in the yard, if such injuries were caused by the employee not being warned of the presence of the post or by the post being constructed and maintained dangerously near to the railroad track.

But if, under the foregoing circumstances, it also appears that the coal company had assumed the duty of keeping the yard lighted at night, that the employee of the railroad company relied on such lighting to warn him of the presence of dangerous structures, that a light, which customarily had shone upon the post against which the employee of the railroad was crushed, had been suffered by an employee of the coal company, who was charged with the duty of keeping the lights in the yard in order, to be and to remain extinguished, and that the accident was caused by the absence of such light, the coal company is liable for the injuries so received.

If, in an action by an experienced brakeman of a railroad company against a coal company for personal injuries received in 1913 while the plaintiff was at work

in the night time within the scope of his employment in a freight yard of the defendant, it appears that the plaintiff mounted a moving freight car at its side near its end and, as he was passing round to the end of the car, was struck and injured by a post dangerously near the track, of whose presence he did not know and which was not lighted by a light which the coal company customarily had maintained together with other lights throughout the yard, and that the plaintiff had come to rely upon the yard being lighted, there is evidence for the jury on the question of the due care of the plaintiff.

CARROLL, J.  The plaintiff, a brakeman in the employ of the defendant in the first named action, hereinafter called the railroad, was injured by being crushed between the side of a coal car and a post on the premises of the defendant in the second action, hereinafter called the coal company.*  The accident happened January 19, 1913, about half past three o'clock in the morning, at Beverly.  The plaintiff was an experienced brakeman.  He had been in the employ of the railroad for a period of eighteen or nineteen years; for seventeen years of that time he had worked at moving freight cars, and from 1910 to the time of the accident he had been in the yards of the railroad in Salem and Beverly.  Beginning early in December, 1912, he went regularly each night with the train crew to the yard of the coal company, and from twelve o'clock midnight until five o'clock in the morning, worked as a brakeman moving cars in the coal company's yard and in an adjoining yard of the Guffey Oil Plant.

At the time of the accident, the plaintiff was holding the grab handle, standing on the step of the forward end of a moving car, was caught by a post between tracks three and four and thrown to the ground.  This post was three feet one and five eighths inches from the track, and was the only post between tracks three and four.  It was used as a support for an overhead framework upon which there was a narrow gauge track for the operation of small coal cars.  The plaintiff testified that he never had seen this post nor had his attention called to it.  Between tracks four and five there were six posts, varying from three feet six inches, to three feet nine and one half inches from track four, and four feet three and one half inches, to four feet and three fourths inches from track five.  Between track five and the fence around the premises,

---

* The cases were tried together before *Hardy, J.*, who at the close of the evidence for the plaintiff ordered a verdict for the defendant in each action.  The plaintiff alleged exceptions.

there was a post three feet two and one fourth inches from the rails. There were five thirty-two candle-power electric lights on posts between tracks four and five. The light nearest the post where the plaintiff was injured was six feet nine and five eighths inches distant. There was evidence that on the morning of the accident this light was not burning. The assistant treasurer of the coal company testified that between twelve o'clock midnight and five o'clock in the morning two employees of the coal company were on the premises, the weigher and the watchman. "The watchman flags the trains, sees that electric lights are all turned on and that they are in good condition. The lighting up of the yard is left to him. . . . It was the duty of Mr. Murphy, the night watchman, to keep the lights burning at the time coal was being shipped out of there."

The tracks were constructed by the railroad, under an agreement with the coal company, the latter to pay the expenses of construction. By the contract the coal company was to keep the track in proper repair outside the railroad location, the railroad company having the right to "refuse to operate on said track when its condition is unsatisfactory to the railroad." The coal company could terminate this contract on ten days' notice and the railroad on thirty days' notice, "upon the failure of the said shipper to comply with reasonable rules and regulations of the railroad." The railroad was not a subscriber under the workmen's compensation act. St. 1911, c. 751, Part IV.

1. The plaintiff contends that the railroad was negligent because of the nearness of the post to the track, the insufficient light which made the place unsafe and because of its failure to warn and instruct the plaintiff. A railroad company is not bound to instruct and point out to an experienced brakeman the location and distance of the abutments, bridges, poles and switches along the line of its track where he may be called to work, even where these objects are upon its own land. *Kempton* v. *Boston Elevated Railway*, 217 Mass. 124. *Bence* v. *New York, New Haven, & Hartford Railroad*, 181 Mass. 221. *Ryan* v. *New York, New Haven, & Hartford Railroad*, 169 Mass. 267. *Vining* v. *New York & New England Railroad*, 167 Mass. 539. *Thain* v. *Old Colony Railroad*, 161 Mass. 353. *Fisk* v. *Fitchburg Railroad*, 158 Mass. 238. Where these conditions exist at the time of employment, and are obvious, there is no negligence in continuing them, because no duty

or obligation of the master to the servant is violated, by suffering such obvious structures to continue as they are at the time of the contract; and this is so under St. 1911, c. 751. *Ashton* v. *Boston & Maine Railroad,* 222 Mass. 65. See also *Cullalucca* v. *Plymouth Rubber Co.* 217 Mass. 392, 396. Under ordinary circumstances a railroad corporation is not held to a higher degree of care in the management of its trains on the premises of another corporation than upon its own, and it cannot be held to the duty of pointing out and warning an experienced brakeman, who is called upon to work in these industrial yards along the line of the railroad, of the obstructions, buildings and poles which may be dangerous under certain conditions, especially · when the construction and maintenance of these erections is not in the control of the master and may vary without notice from day to day. *Trask* v. *Old Colony Railroad,* 156 Mass. 298. *Engel* v. *New York, Providence & Boston Railroad,* 160 Mass. 260. *Moynihan* v. *King's Windsor Cement Dry Mortar Co.* 168 Mass. 450. *Hyde* v. *Booth,* 188 Mass. 290.

The railroad did not construct the post between tracks three and four. It had no control over it, and was not guilty of negligence because the coal company maintained it at this place as a support to its overhead structure. Nor was the railroad in any way responsible to the plaintiff for the condition of the lights. That was a work undertaken entirely by the coal company, with reference to which the railroad assumed no responsibility.

2. The coal company was not negligent in maintaining the post or in failing to warn the plaintiff of the danger which might arise from it. When the track was built, the coal pockets, the overhead track and the poles were placed substantially as they were when the plaintiff was injured. From April or May, 1912, the tracks were constantly in use, and it might reasonably be inferred that the men working there night after night were familiar with all the surroundings. It was not obliged to inform itself when an employee of the railroad began working in the yard and tell him of the danger. *Shaw* v. *Ogden,* 214 Mass. 475. *Marston* v. *Reynolds,* 211 Mass. 590. *Sullivan* v. *New Bedford Gas & Edison Light Co.* 190 Mass. 288.

The duty owed by the coal company to the employees of the railroad is the same as the duty owed to the employees of an independent contractor invited on its premises. The employees.

take the apparatus and appliances as they find them, so far, at least, as they can be plainly seen; as to obvious and permanent obstructions, such as buildings or posts, there is no duty to warn or instruct.  See *Sullivan* v. *New Bedford Gas & Edison Light Co. supra; Crimmins* v. *Booth,* 202 Mass. 17; *Cole* v. *L. D. Wilcutt & Sons Co.* 218 Mass. 71; *Pettingill* v. *William Porter & Son, Inc.* 219 Mass. 347.

There was evidence that the light nearest to the post where the plaintiff was hurt was out, and also that the only light in the yard came from an electric street light.  It is suggested in the coal company's brief, that in switching coal cars where signals are given by lighted lanterns, the work is not facilitated if the yard is illuminated.  That may be true, but it is purely a question of fact.  The defendant for some purpose had installed electric lights in the yard and the duty of one of its employees was to keep the lights in good condition, "to keep the lights burning at the time coal was being shipped out of there."  While it may be true on the evidence disclosed, that the coal company was not obliged to light the yard for the convenience of the railroad or of its servants and agents, and is not liable in damages to the plaintiff because of the mere fact that the yard generally was illuminated and on this night was dark, it is responsible, however, to the plaintiff, if it maintained the lights in the yard to assist him and his fellow servants in shifting and transferring the coal cars and they relied on this practice of the coal company.  In voluntarily assuming this duty, it may be held liable for failure to comply with it.  If the coal company kept the yard illuminated for the purpose stated and the plaintiff relied on the practice, and because of its failure in this respect he was injured, by failing to see the post, owing to the darkness, the jury could find the coal company to be negligent.  It does not expressly appear for what purpose the yard was illuminated, but the jury could say it was for the purpose of aiding the men in doing their work and that the coal company assumed this duty.  *Hanley* v. *Boston Elevated Railway,* 201 Mass. 55, 57.  "Evidence of the usage of the road, that one train should not enter a station while another train was engaged in delivering passengers there, was competent upon the question whether the defendant's servants managed the train in a proper manner."  *Floytrup* v. *Boston & Maine Railroad,* 163 Mass. 152, 153.

The position of the coal company in habitually lighting the yard and its failure to comply with the practice in the present case is in some respects the same as that of the defendant who violates one of its own rules established for the safety of the public. If the usage, like the rule, is established for the safety of others, its violation by the company's servants is a departure from the standard of care it has itself decided to be necessary, and is evidence of negligence. As stated by Knowlton, C. J., in *Stevens* v. *Boston Elevated Railway*, 184 Mass. 476, at page 480: "Against the proprietor of a business, the methods which he adopts for the protection of others are some evidence of what he thinks necessary or proper to insure their safety."

There was evidence of the plaintiff's due care. The jury might say, considering the darkness, the place where he mounted the car and the short space of time intervening between this act and the collision,* that he was careful, even though riding on the side of the car. In *Kempton* v. *Boston Elevated Railway*, 217 Mass. 124, it was assumed that the plaintiff who was on the side of a car while passing a post, was in the exercise of due care. In *Ladd* v. *Brockton Street Railway*, 180 Mass. 454, the plaintiff was injured in the forenoon of a bright day and twice before on the same day had passed by the place where he was injured. See *Stoliker* v. *Boston*, 204 Mass. 522.

In the case against the Boston and Maine Railroad the plaintiff's exceptions are overruled.

In the case against Sprague, Breed and Brown Company the plaintiff's exceptions are sustained.

*So ordered.*

*E. S. Underwood*, for the plaintiff.

*C. A. Wilson*, for the defendant Boston and Maine Railroad.

*H. V. Cunningham*, for the defendant Sprague, Breed and Brown Company.

---

* The plaintiff testified that he mounted at the side of the car near the end and was in the act of passing to a position between the ends of the cars when he was struck.