FREDERICK MURRAY *vs.* NANTASKET BEACH STEAMBOAT COMPANY.

Suffolk.    January 15, 1924. — April 29, 1924.

Present: RUGG, C.J., DeCOURCY, PIERCE, CARROLL, & WAIT, JJ.

*Negligence,* Liability of owner of vessel to employee of contractor repairing it, Assumption of risk.

The rights and obligations of the owner of a steamboat to the employee of a contractor repairing the boat for the owner, so far as they relate to the necessary use by the employee of passageways and hatchways upon the boat, are those which appertain to the relation of master and servant at common law and apart from the workmen's compensation act.

The contractual risks, which the employee of the contractor in the circumstances above described assumes upon entering upon such em-

ployment, are those which are apparent to an ordinarily intelligent person if he sees them, or if he should have seen them in an exercise of his right to look over the place and its appliances with a view to decide whether he would enter upon the employment under the conditions disclosed.

At the trial of an action by a workman employed as a riveter by a contractor who was repairing a steamboat for the owner, there was evidence tending to show that, when the workman entered his employment, the boat was lighted with electric lights furnished by a current running from the land; that there were two enclosed places upon the boat and a passageway between them which led down into an engine room through an opening of a hatchway in the main deck; that the hatchway was a part of the regular permanent construction of the boat and was there when the boat was turned over to the contractor for repairs, and often was used as the usual, if not the only, means of approach to a lower engine room from an upper engine room; that the hatchway was uncovered; that when the electric light was not maintained, the passageway was dark; that when the plaintiff was employed he made no examination of the housed-in portion of the main deck, nor did he do so before his accident. The accident to the plaintiff occurred after the boat had been disconnected from the land and the electric light had been turned off, and when he was passing down the dark passageway in preparing his tools for removal at the end of the work. *Held*, that

(1) As a matter of law, the conditions and dangers attendant upon the use of the passageway were obvious and capable of being seen when the plaintiff was employed;

(2) During his employment, the plaintiff had every opportunity to examine and inquire about the conditions which might make the passageway and the entrances from it to the engine room below unsafe for his use;

(3) The lack of electric lights at the time of his injury made his duty to make an examination all the greater;

(4) As a matter of law, the plaintiff must be held to have assumed the risk of the injury he suffered;

(5) A verdict should be entered for the defendant.

TORT for personal injuries suffered by the plaintiff when employed by Richard T. Green Company in repairing for the defendant the steamboat " Mary Chilton." Writ dated May 4, 1921.

In the Superior Court, the action was tried before *Irwin,* J. Material evidence is described in the opinion. The jury returned a verdict for the plaintiff in the sum of $9,500, and, before recording it, the judge reserved leave under G. L. c. 231, § 120, to enter a verdict for the defendant if the case should not have been submitted to the jury. The judge then reported the case to this court for determination.

*F. R. Mullin,* (*P. F. Spain* with him,) for the plaintiff.

*S. R. Jones,* for the defendant.

PIERCE, J.   This is an action of tort for personal injuries, received by the plaintiff and alleged to have been caused by the negligence of the defendant.   The case was tried before a jury.   At the close of the plaintiff's evidence, the defendant rested and duly made a motion for a directed verdict in its favor.   The motion was denied and the defendant duly excepted.   The evidence was then submitted to the jury and a verdict was returned in favor of the plaintiff.   Before the verdict was recorded, the trial judge, with the assent of the jury, reserved leave to enter a verdict for the defendant under the provision of G. L. c. 231, § 120.   The defendant now urges in support of its motion two grounds, (1) " That the plaintiff was not in the exercise of due care; " and (2) " That the plaintiff assumed the risk of his injuries."   A further question is argued of the admissibility of the evidence of a witness for the plaintiff, " That it is a usual thing to have pipe rail guards around an open hatchway aboard ship." We assume the defendant waives any other possible legal grounds for sustaining his motion.

In the discussion we assume the rights and obligations of the plaintiff and defendant, the one to the other, are those which appertain to the relation of master and servant at common law and apart from the workmen's compensation act.   *Sullivan* v. *New Bedford Gas & Edison Light Co.* 190 Mass. 288, 292.   The contractual risks a servant assumes on entering an employment are such as are apparent to an ordinary intelligent person if he sees them, or should have seen them if he had exercised his right to look over the place and its appliances with a view to decide whether he would enter upon the employment upon the conditions disclosed. *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153, 159. *McLeod* v. *New York, New Haven & Hartford Railroad,* 191 Mass. 389.   *Crimmins* v. *Booth,* 202 Mass. 17, 23.

The evidence which describes the premises where the accident occurred and the actual and constructive knowledge of the plaintiff in relation thereto, succinctly stated, is, that the plaintiff, a riveter, was employed by the Richard T. Green

Company (hereafter called the Green Company) to work at his trade on the steamboat on which he was hurt, while that boat was in the shipyard and on the railway of the Green Company, for repairs by the Green Company, in accordance with a contract between that company and the defendant. When the plaintiff entered the employment of the Green Company, the boat was lighted with electric lights, furnished by a current running from the land to the boat. There was a house construction, called the engine-room casing, on the main deck, covering the engine and machinery. The space was all housed in. Inside of this house there was a room, which was called the upper engine room, on the main deck in an enclosed space, which protected that part of the machinery which projected up into that space and partly filled the closed-in house. Between the inner enclosed space and the outer enclosed space there was a passageway which led down into the engine room, through an opening or hatchway in the main deck. This hatchway was a part of the regular permanent construction of the boat and was there when the boat was turned over to the Green Company for repairs. The passageway was often used, and in connection with the hatchway was the usual means if not the only means of approach to the engine room below from the engine room above. The hatchway was uncovered, was four or five feet long, and at times had movable steps or a ladder which did not project above the level of the deck. When the electric lights were not maintained, the passageway was very dark. When the plaintiff was employed he made no examination of the housed-in portion of the main deck, and thereafter, before his accident, did not do so.

The evidence in relation to the accident shows that the plaintiff had worked for four or five days immediately prior to the accident riveting a bulkhead which ran from port to starboard through the centre of the boat; that on the day of the accident he quit work at noon for lunch; that the boat was then on the railway of the shipyard of the Green Company; that when he returned the boat was in the water at Cabot's Wharf; that when he quit at twelve o'clock,

noon, so far as the plaintiff knew there was no more work to be done on the boat other than to gather up his tools; that on his return he went downstairs to the mess room, got his machine, and brought it up to the main deck; that in the mess room men were eating by the light of a lantern, the current of the electric lights being disconnected when the boat was moved from the railway to the wharf; that he started to roll up the air hose which ran from the bow of the boat to the stern through the closed-in house; that he approached the door of the house from the after part of the deck, walking forward and rolling up the hose as he walked; that he followed the hose into the enclosed dark space of the passageway, which he did not know about, three or four feet, and fell through the hatchway ten or twelve feet to the floor below.

On the facts, we think the conditions and dangers attendant upon the use of the passageway were obvious and capable of being seen when the plaintiff was employed: the main deck was lighted by electricity; the covered space apparently was lighted by artificial lights; if not, it was lighted from the lights on the main deck. During his employment the plaintiff had every opportunity to examine and inquire about the conditions which might make unsafe for his use the passageway and the entrance from it to the engine room below. His duty to make an examination or make inquiry concerning the conditions attending the use of the enclosed space was all the greater if there were no electric lights on the deck or within the space enclosed, if he did not intend to take the chance of injury from a blind use of the passageway. We think the case is covered by *Cross* v. *Boston & Maine Railroad*, 223 Mass. 144, *McCafferty* v. *Lewando's French Dyeing & Cleansing Co.* 194 Mass. 412, *Smith* v. *Lincoln*, 198 Mass. 388, *Pearson* v. *Boston Gas Light Co.* 201 Mass. 176, and *Connolly* v. *Furbush*, 201 Mass. 271.

In accordance with the terms of the report, it results, in the opinion of a majority of the court, that a verdict should be entered for the defendant.

*So ordered.*