Jessie Ann McRae, administratrix, *vs.* Gorton-Pew
Vessels Company.

Essex.   January 13, 1926. — February 24, 1926.

Present: Rugg, C.J., Braley, Carroll, Wait, & Sanderson, JJ.

*Negligence,* Employer's liability: assumption of risk.

An experienced seaman and fisherman upon a fishing vessel on the
Gloucester quarter lay cannot recover from the owner of a part interest
in the vessel in an action of tort at common law for personal injuries
caused by his slipping upon exposed cogs of a pump on the deck of a
vessel which were in plain sight, although it was dark when he was
injured, if it appears that the pump frequently was in operation and had
been so when, after a previous period of employment, he had reëntered
employment on the vessel for the trip immediately preceding that upon
which he was hurt; since it must be *held,* that, as a part of his contract
with the defendant, he had assumed the risks of the employment and
the danger from the moving gear.

Tort for personal injuries received when the plaintiff,
while employed as a seaman upon the fishing vessel Laverna,
fell into cogs upon a pump on the deck of the vessel on
December 28, 1918.   Writ dated February 20, 1920.

In the Superior Court, the action was tried before
*Hammond,* J.   Material evidence is described in the opinion.
At the close of the evidence, the defendant moved that a
verdict be entered in its favor.   The motion was denied.
The jury found for the plaintiff in the sum of $8,250, the trial
judge before the recording of the verdict reserving leave with
the consent of the jury to enter a verdict for the defendant.

*J. W. Coughlin,* (*J. M. Morrison* with him,) for the defendant.

*S. R. Jones,* for the plaintiff.

Carroll, J.   Daniel Edwards, the original plaintiff (hereinafter referred to as the plaintiff) has died since the trial.
The action is prosecuted by his administratrix.

The plaintiff, who was a fisherman on the schooner
Laverna which was anchored in the outer harbor of Ingonish,

Cape Breton, was injured while hoisting the anchor in the early morning on December 28, 1918. The anchor was attached to a manila cable nine inches in circumference. After passing over the drum of the windlass, the cable, which "was icy and stiff," came to Edwards and he was bending it so that it could be coiled. There was a ground swell at the time. The cable "slipped sideways and pulled him, he was standing on the cable. . . . His foot slipped," and "his hand got caught in the cog wheels of the pump which were not guarded."

The defendant owned a one-quarter interest in the schooner and the master of the vessel owned a three-quarter interest. It was run on the Gloucester quarter lay. Under this agreement, from the proceeds received from the sale of fish, there is first deducted the expenses for lost or damaged gear; the vessel receives a quarter of the remainder, then the expenses for food, ice, bait, and the cook's wages are deducted, and the balance is divided among the men, the captain taking the same share as each member of the crew.

The plaintiff was fifty-one years of age, and "had up to the time of his accident . . . always been engaged as a fisherman." He had been employed on the Laverna for several years before his injury, and at some time had ceased to work on this vessel. He returned "the year before . . . [he] got hurt." He noticed the pump. There was evidence that it was in the same condition for a year or two before the plaintiff was injured, with the gears exposed, and "was always going as it was at this time when you were hoisting the anchor." The plaintiff testified, "it was about four weeks while I was on the trip, from the day I left until I got hurt." He was asked if he had taken several trips on the Laverna before he got hurt, and he answered, "I won't tell you how many trips I took." To the question, how many trips do you think you made, he replied, "I should think I had made two." The action is at common law. There was a verdict for the plaintiff.

Assuming that the case is to be decided by the rules of common law, and not according to the principles of admiralty, *Proctor* v. *Dillon* 235 Mass. 538, it appeared that the

plaintiff was an experienced seaman. A pump with its exposed gear was in plain sight on the deck of the vessel. It was frequently in operation, and when the plaintiff returned to his employment on the schooner, as well as when he started out on the trip on which he was injured, the pump was in the same condition and could have been seen. Although it was dark when the plaintiff was injured, he must have known of the location of the pump and its operation. Even if a guard had at some time been on the pump, there was no protection on it when the plaintiff reëntered the employment of the defendant, nor at the time of the trip preceding the one on which he was injured, nor when the vessel left Gloucester in November, 1918. At the beginning of his employment the plaintiff could have seen the pump. He had the opportunity to examine and inquire about the conditions of his work. With his experience as a fisherman he must have understood these conditions and it must be held that, as a part of his contract with the defendant, he assumed the risks of the employment and the danger from the moving gear. The case cannot be distinguished from *Murch* v. *Thomas Wilson's Sons & Co.* 168 Mass. 408, *McCafferty* v. *Lewando's French Dyeing & Cleansing Co.* 194 Mass. 412, *Ashton* v. *Boston & Maine Railroad,* 222 Mass. 65, *Ford* v. *Trident Fisheries Co.* 232 Mass. 400, *Murray* v. *Nantasket Beach Steamboat Co.* 248 Mass. 587, and similar cases dealing with the question of the contractual assumption of the risk.

Without considering the other questions involved, the plaintiff cannot recover because he assumed the risk.

*Exceptions sustained.*

*Judgment to be entered for the defendant.*